812 So.2d 12 (2001)
Magda Sobhy Ahmed AMIN, et al.
v.
Abdelrahman Sayed BAKHATY.
No. 2000 CU 2710.
Court of Appeal of Louisiana, First Circuit.
May 11, 2001.
Rehearing Denied June 20, 2001.
Writ Denied July 18, 2001.
*17 Jack M. Dampf, Gregory P. Aycock, Hany A. Zhody, Baton Rouge, for Plaintiff-Appellee Magda Sobhy Ahmed Amin.
Randy J. Fuerst, Stockwell, Sievert, Viccellio, Clements & Shaddock, Lake Charles, Steve M. Irving, Baton Rouge, for Defendant-Appellant Abdelrahman Sayed Bakhaty.
Before: PARRO, FITZSIMMONS, and GUIDRY, JJ.
PARRO, J.
The father in this child custody case, Abdelrahman Sayed Bakhaty (Dr. Bakhaty) appeals judgments overruling his exceptions of lack of subject matter jurisdiction, lack of personal jurisdiction, lis pendens, and insufficiency of citation and service of process; awarding provisional sole custody of his minor son, Ahmed, to his ex-wife, Magda Sobhy Ahmed Amin (Ms. Amin); and ordering him to pay provisional child support, to provide medical insurance coverage for the child, and to pay all non-covered medical and dental expenses for the child. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
In this case of first impression, the issue is whether a Louisiana court may exercise jurisdiction over the custody and support of a child who was born in Egypt to an Egyptian mother and father, whose Egyptian father lives in New Jersey and is a United States citizen,[1] when the mother removed the child from Egypt without the father's permission and filed for divorce and custody within one month after arriving in Louisiana.
In early December 1998, Ms. Amin traveled from Egypt to the United States with her son, Ahmed. She went first to New York and then came to Baton Rouge, Louisiana, where her sisters live. On January 7, 1999, she filed suit against Dr. Bakhaty in The Family Court for the Parish of East Baton Rouge, seeking a divorce, sole custody of Ahmed, and child support.[2] The petition stated she is an Egyptian citizen residing in East Baton Rouge Parish, that she and Dr. Bakhaty were married in Egypt on November 21, 1991, and that Ahmed was born in Egypt on August 23, 1992. The petition also stated that Dr. Bakhaty is a United States citizen domiciled in New Jersey, that he had abandoned the marriage and refused to support her and the child, and that the parties had been physically separated since June 1998.
On May 28, 1999, Dr. Bakhaty filed a "Petition for Civil Warrant" in The Family Court for the Parish of East Baton Rouge, alleging he was a citizen of Egypt and a medical doctor with a practice in New York. He claimed that Egyptian law required the husband/father's approval in order for his spouse and minor child to *18 validly obtain travel documents, and that he did not give his approval for his wife to take Ahmed out of Egypt and, in fact, had no advance notice of her plans. Dr. Bakhaty also alleged that his wife had obtained travel documents for herself and their son under false pretenses.[3] He claimed that when he learned of her actions, he divorced her in Egypt on January 8, 1999; the divorce was filed and certified by the Egyptian court on January 9, 1999. He also stated that under Egyptian law, both the temporary guardianship and physical custody of Ahmed were exclusively with him, and that an order to confirm his custody was pending before the Egyptian court. The civil warrant petition was allotted to a different judge from the one in whose court Ms. Amin's divorce and custody matters were pending; the second judge signed an order authorizing a warrant to be issued for law enforcement personnel to assist Dr. Bakhaty in locating Ahmed and taking him back to Egypt. However, on June 1, 1999, by agreement of the parties and by order of the court, all matters pertaining to the civil warrant were stayed and both parties agreed not to remove Ahmed from the court's jurisdiction without court approval. Ms. Amin was ordered to surrender her passport and Ahmed's passport to the court, which she did. The consent judgment allowed Dr. Bakhaty to visit with the child if he surrendered his passports to the court during his visit.
On June 15, 1999, Dr. Bakhaty filed exceptions. He claimed the pending divorce was subject to the exception of res judicata, due to the judgment of the Egyptian court, which also mooted all custody and support claims. He objected to the court's personal jurisdiction over him and subject matter jurisdiction over custody of his child. He also raised the exception of lis pendens due to the pending Egyptian case, and objected to the sufficiency of service of process on him.
On November 23, 1999, Ms. Amin filed a rule for sole custody of Ahmed, admitting that she and Dr. Bakhaty had been divorced on January 8, 1999, in Cairo, Egypt. She also requested child support, retroactive to the date of her initial petition in the case, and periodic support for herself until she could find employment. On January 10, 2000, Dr. Bakhaty reurged his exceptions and suggested he could not be compelled to participate in discovery, because the court lacked personal jurisdiction over him. After several continuances and resolution of the contested discovery matters, a trial on his exceptions was set for March 9, 2000.
At that hearing, the parties stipulated that the Egyptian divorce was final and the court orally granted Dr. Bakhaty's exception of res judicata as to Ms. Amin's divorce action. After the hearing, at which both parties and several other witnesses testified and documentary evidence was introduced, the court took the remaining exceptions under advisement. On May 11, 2000, the court assigned written reasons and rendered judgment overruling all of Dr. Bakhaty's other exceptions. A *19 hearing was scheduled for May 30, 2000, to determine provisional custody and support. Dr. Bakhaty filed an emergency writ action with this court, seeking a stay of that hearing and review of the court's ruling on the exceptions; this court denied the writ. Amin v. Bakhaty, 00-1164 (La.App. 1st Cir.5/30/00) (unpublished writ action).
The hearing proceeded on May 30, 2000; Dr. Bakhaty was represented by counsel, but was not present. In a judgment signed June 20, 2000, the court granted provisional custody of Ahmed to Ms. Amin, ordered Dr. Bakhaty to pay child support and to provide medical coverage for Ahmed, and ordered that Ahmed's residence remain in the Parish of East Baton Rouge pending further custody and support proceedings. Dr. Bakhaty brought another writ action challenging both judgments, which was again denied. This court noted that the judgment of June 20, 2000, was an appealable interlocutory judgment, that an appeal was pending by the time the writ was acted upon, and that the issues raised could be addressed on appeal. Amin v. Bakhaty, 00-1582 (La. App. 1st Cir.8/21/00) (unpublished writ action).
In this appeal, Dr. Bakhaty argues the trial court erred in finding sufficient service of process and personal jurisdiction over him. He also contends the court erred in allowing Ms. Amin to plead the Fifth Amendment on questions concerning Ahmed's Egyptian passport, the answers to which were needed to assess her credibility and demonstrate her bad faith in removing him from Egypt. Dr. Bakhaty also argues the trial court demonstrated bias against the Egyptian legal system and improperly applied the Uniform Child Custody Jurisdiction Act in finding it had jurisdiction over the subject matter. Finally, he asserts the court erred in ordering him to pay interim child support when it had neither personal jurisdiction over him nor subject matter jurisdiction.[4]

STANDARD OF REVIEW
The appellate court's review of factual findings is governed by the manifest errorclearly wrong standard. The two-part test for the appellate review of a factual finding is: 1) whether there is a reasonable factual basis in the record for the finding of the trial court, and 2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, if there is no reasonable factual basis in the record for the trial court's finding, no additional inquiry is necessary. However, if a reasonable factual basis exists, an appellate court may set aside a trial court's factual finding only if, after reviewing the record in its entirety, it determines the trial court's finding was clearly wrong. See Stobart v. State, through Dep't of Transp. and Dev., 617 So.2d 880, 882 (La.1993). Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, 617 So.2d at 882. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Stobart, 617 So.2d at 883.
A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. When such a prejudicial *20 error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. Evans v. Lungrin, 97-0541, 97-0577 (La.2/6/98), 708 So.2d 731, 735.

DISCUSSION
This court has reviewed the arguments presented in this appeal, has examined the record, has researched the applicable law, and has studied the trial court's written reasons for judgment on the exceptions, rendered May 11, 2000. The factual findings of the trial court expressed in those reasons are fully supported by the documentary and testimonial evidence in the record, and we find no manifest error in those findings. Our comments concerning the factual posture of this case address only the factual finding that we consider the most significant to the trial court's resolution of the issues.
Crucial to the trial court's determination is the factual finding that Ms. Amin's intent when she came to the United States with Ahmed was not to abscond with the child, stay in this country, divorce her husband, and get custody of their child, as Dr. Bakhaty maintains. The court clearly believed Ms. Amin's testimony that she came to the United States intending to visit her husband, to allow Ahmed to spend time with him here, and to reconcile their marital problems, if possible. Ms. Amin bought a round-trip ticket; her return flight was January 4, 1999. Dr. Bakhaty claimed he did not know she was coming to the United States until she called him from Baton Rouge sometime in mid-December. This coincides with Ms. Amin's testimony; she said she was unable to reach Dr. Bakhaty at the phone number she had for him before and upon her arrival in New York. Ms. Amin said when she finally talked with Dr. Bakhaty in mid-December from Baton Rouge, he agreed to come to Baton Rouge to see her and Ahmed. Dr. Bakhaty admitted telling her that, but said he actually had no intention of coming under the circumstances. So while she and Ahmed waited for him in Baton Rouge, he flew to Egypt to confirm his suspicions about her removing Ahmed without his permission and without proper travel documents.
Sometime in early January, Ms. Amin heard from her father that Dr. Bakhaty was in Egypt and was investigating her actions for the purpose of bringing charges against her. At this point, realizing her marriage was irreparably broken and her ability to return to Egypt was seriously jeopardized, Ms. Amin decided to petition the Louisiana court for a divorce, custody, and support. That petition was filed before Dr. Bakhaty officially commenced anything in the Egyptian courts. As late as March 9, 2000, at the hearing on the exceptions, both parties were still willing to stipulate that Ms. Amin would return to Egypt with Ahmed and continue to care for him there, if the criminal sentence against her could be dismissed and if certain support arrangements could be made in the interim. These on-the-record discussions concerning a proposed stipulation were not resolved that day and apparently never reached fruition, but they belie Dr. Bakhaty's assertion that Ms. Amin's intentions were dishonorable or her conduct reprehensible. The trial court's factual conclusion concerning her initial intent and motivation is supported by the record and is not clearly wrong; this conclusion strongly influenced the court's decision concerning subject matter jurisdiction and application of the Uniform Child Custody *21 Jurisdiction Act (UCCJA).[5]
Furthermore, we find no error of law in the court's application of the UCCJA or in its judgment on the exceptions. We do not find it necessary to expand on the trial court's written reasons for judgment, as they fully address the issues raised here and in the trial court with respect to the exceptions.[6] Therefore, we attach and adopt those reasons in their entirety in support of our decision on appeal. See Appendix.
Turning to Dr. Bakhaty's arguments on appeal addressing the conduct of the trial, we conclude there were no evidentiary irregularities or bias that tainted the proceedings or the result. Dr. Bakhaty claims the trial court erred in refusing to order Ms. Amin to answer certain questions pertaining to the method by which she obtained Ahmed's Egyptian passport and her application for asylum in the United States. Because of the criminal matters lodged against her in Egypt and possible ramifications with the Immigration and Naturalization Services in the United States, she pled the Fifth Amendment in response to those questions. Dr. Bakhaty argues the trial court should have insisted on answers to those questions, and its failure to do so prejudiced his case.
However, the trial court listened to Dr. Bakhaty's testimony and that of his experts and noted in its reasons that under Egyptian law, Dr. Bakhaty's written approval was required before Ms. Amin or Ahmed could leave the country. Ms. Amin admitted she did not have his permission before she came to the United States with their son. Although the exact communications resulting in Ahmed's Egyptian passport were not elicited from her, documents submitted by Dr. Bakhaty were accepted into evidence. These indicated that in November 1998, Ms. Amin's brother-in-law, Hany Zohdy, an attorney who lives in Baton Rouge,[7] obtained affidavits from two of his Egyptian friends, stating Ahmed needed medical treatment from his father and needed to visit him in the United States. Thus, the circumstances under which Ahmed's Egyptian passport were obtained were generally known to the court without additional testimony from Ms. Amin or Mr. Zhody. The court recognized in its written reasons that the circumstances under which Ms. Amin left Egypt with Ahmed were questionable, noting also that Ms. *22 Amin had been convicted in Egypt for related criminal charges. It is unlikely her testimony would have provided any significant additional information to the court. Accordingly, the court's recognition of Ms. Amin's right to plead the Fifth Amendment on those very limited issues did not prejudice Dr. Bakhaty and was not legal error.
Similarly, it was clear from Ms. Amin's testimony that, although her original intent was merely to visit the United States, the circumstances occurring after her arrival caused her to change her mind and she now intended to stay here, if possible. However, she admitted she had been allowed to stay here on an extension of her visitor's visa. According to Mark Lazarre, an expert on immigration requirements, in applying for an extension of her visitor's visa, she must have declared her "non-immigrant" intention and status. Ms. Amin had also applied for asylum in the United States. Mr. Lazarre informed the court that the declarations needed for these various applications were internally inconsistent; either Ms. Amin intended to stay in the United States or she did not. The trial court was made aware of this inconsistency and had sufficient information to consider it in evaluating Ms. Amin's credibility on this and other issues. Therefore, Dr. Bakhaty was not prejudiced by the trial court's refusal to order Ms. Amin to answer questions about her asylum application.
Dr. Bakhaty also claims the court demonstrated bias against the Egyptian legal system by selecting only portions of Patricia Aby's testimony in support of its ruling.[8] However, although the trial court specifically referred to that testimony in its written reasons, the court's selections reflect the totality of the evidence in the record concerning the applicable Egyptian law and its interrelationship with the Islamic law under which Dr. Bakhaty and Ms. Amin were married. Translations of certain court documents and judgments in several of the Egyptian legal proceedings initiated by Dr. Bakhaty were in evidence. These suggest a legal system that is vastly different from our own. Also, Dr. Bakhaty's affidavit when he petitioned for a civil warrant stated he believed that, by operation of Egyptian law, both the temporary guardianship and physical custody of Ahmed rested exclusively with him. The attached translation of a provision of the Egyptian Civil Code stated that the right to custody goes to the father, then to the grandfather in case a guardian was not appointed by the father. Therefore, although Ms. Aby did say physical custody of a young child would generally be with the mother, she also admitted guardianship or right of control was always with the father. After a divorce, the mother's physical custody of the child was generally allowed only if the father with guardianship lived nearby and could continue to exercise control. Ms. Aby also said guardianship included the right to choose the habitual residence of the child.
In addition, Dr. Bakhaty and Ms. Amin testified concerning the practical effect of Islamic and Egyptian law in the areas of divorce and child custody, and much of their testimony was confirmed by the expert. Ms. Aby confirmed Ms. Amin's deposition testimony that under Islamic law, the husband could pronounce a divorce merely by stating so three times. Civil effect would be given to the declaration simply by having it notarized and served on the wife or her representative. *23 Only after that was done could the wife raise certain limited issues with the court, and then only if she had reserved her right to do so in her original marriage contract. Based on Ms. Aby's review of the marriage contract entered into between Dr. Bakhaty and Ms. Amin, no such rights were reserved. In contrast, according to Ms. Aby, a woman could divorce her husband only through court action and for very limited causes, such as physical or emotional abuse.
We do not read the court's recitation of Egyptian law as biased, but as a fairly accurate summary based on the totality of the evidence in this case. The court characterized Egyptian family laws as "genderbiased." While this characterization might have been unnecessary, it is not inaccurate and does not demonstrate that the trial court misapprehended the nature of Egyptian law and customs.
Furthermore, the court made clear, and we agree, that the unique circumstances of this case required more consideration for the best interest of this child than for the extension of comity toward the Egyptian/Islamic legal system.[9] Ahmed has never spent one night of his life away from his mother. In contrast, Dr. Bakhaty testified he visited Egypt, at the most, six times a year, staying only a week to two weeks each visit. During those visits, he and Ms. Amin would generally spend some private time in a hotel, not at her father's home where she and Ahmed lived. There was a period of almost two years of his son's life during which Dr. Bakhaty did not visit at all; he explained this extended absence by saying he was very angry with his wife at that time. Dr. Bakhaty has lived in the United States virtually all of his adult life; he became a citizen in 1989, and his medical practice is in New York. He testified that he has a minimal practice in Egypt also, in that colleagues allow him to use their offices when he is there. If his infrequent visits to Egypt also included time spent in a medical practice, there could not have been much time left to establish the "strong bond" with Ahmed that Dr. Bakhaty claimed to have.
Also, if Dr. Bakhaty were to gain custody of Ahmed, his stated intent was to send or take him back to Egypt immediately. As the trial court noted, because of the criminal convictions against Ms. Amin, she either could never return to Egypt or would be imprisoned upon her return. Either way, Ahmed would be deprived of his relationship with the parent who raised him. On the other hand, if Ms. Amin had custody, she intended to stay in the United States. Given Dr. Bakhaty's United States citizenship and long-time residence in this country, he would not be deprived of the opportunity to visit with Ahmed, perhaps even more often than he did in the previous eight years of the child's life. Therefore, we find no error in the trial court's application of the UCCJA and its decision to exercise "residual" jurisdiction in the best interest of this child,[10] rather than deferring to the Egyptian legal system where that interest is not paramount.
*24 This case is unique. It does not involve a parent taking a child from the country in which the other parent resides. Rather, it involves a parent bringing a child to the country where the other parent resides. This is an important difference. As a result of the court's judgment in this case, Ahmed lives with his mother in the United States, the country where both of his parents now live, rather than living with one parent in Egypt, while the other parent lives in the United States. This is a just result.

CONCLUSION
The trial court's judgments of May 11, 2000, and June 20, 2000, are affirmed. All costs of these proceedings are assessed against Dr. Bakhaty.
AFFIRMED.
GUIDRY, J., concurs in the result.
FITZSIMMONS, J., dissents, and assigns reasons.

APPENDIX

NOTICE OF RENDITION OF JUDGMENT AND WRITTEN REASONS

MAGDA AMIN

VS

ABDELRAHMAN BAKHATY

NO: 130,818 DIVISION "C"

THE FAMILY COURT

EAST BATON ROUGE PARISH

STATE OF LOUISIANA
TO: MR. RANDY FUERST, MR. STEVE IRVING, MR. JACK DAMPF, AND MR. HANY ZOHDY GREETINGS:
You are hereby notified that written reasons for judgment rendered on May 11, 2000 were issued on the minutes of The Family Court on the 30th day of May, 2000, in the above entitled and numbered cause, and the following is a true copy of the entry of said reasons.
This matter having been submitted and taken under advisement, the Court for written reasons assigned, rendered judgment as follows:
This case concerns the application of the Uniform Child Custody Jurisdiction Act (the UCCJA) to an international custody dispute involving Louisiana and Egypt.
Magda Amin, an Egyptian citizen, and Abdelrahman Bakhaty, a United States citizen, were married on November 21, 1991. However, they never established a "matrimonial domicile." This is due to the fact that Dr. Bakhaty maintains a medical practice in the United States, and therefore, he spends the majority of his time in the United States. During the marriage, Ms. Amin lived in her father's home in Egypt. One child was born of the marriage between Dr. Bakhaty and Ms. Amin; namely, Ahmed Bakhaty. Ahmed was born on August 23, 1992 in Egypt.
Magda Amin is presently residing in Baton Rouge, Louisiana. Abdelrahman Bakhaty is presently residing in New Jersey. He also "maintains residence" in Egypt. When Dr. Bakhaty is in Egypt, he stays in a hotel or at his mother's home.[1]
*25 Since birth, Ahmed has always resided with his mother.
In December 1998, prior to any litigation being instituted by either party, Ms. Amin and Ahmed came to the United States to visit Dr. Bakhaty, as well as her sisters (all of whom reside in Baton Rouge, Louisiana). Ms. Amin traveled under her Egyptian passport. Ahmed traveled under his United States passport. Egyptian law prohibits a married woman (as well as a minor child) from traveling outside the country of Egypt without the express, written permission of the father. In December 1998, Ms. Amin did not have Dr. Bakhaty's express, written permission to leave Egypt with the minor child. The circumstances under which she was able to exit Egypt with the minor child were questionable.
When Ms. Amin arrived in the United States, she contacted Dr. Bakhaty by telephone. Ms. Amin believed that Dr. Bakhaty was going to come meet her in Baton Rouge, so, thereafter, she began searching for an apartment in Baton Rouge for them to reside. Dr. Bakhaty never came to meet his wife in Baton Rouge. Several days later, Ms. Amin's father contacted her and informed her that Dr. Bakhaty brought criminal charges against her in Egypt for removing the minor child from Egypt without his permission, and for fraud (as to the manner in which she obtained Ahmed's passport). She has since been convicted in Egypt for these alleged crimes.
At the outset, it should be noted that Egypt follows Islamic family law.[2] Egyptian family law is "gender biased," as it provides protection to certain people based solely on gender. A husband and wife do not have equal rights. Of particular importance to this case is the Egyptian concept of "guardianship". When there is a minor child born of a marriage, Egyptian law provides that the father has the absolute right to the guardianship and the physical custody of the minor child. Men in Egypt can divorce their wives anytime and without court approval. The procedure for a man involves the husband proclaiming, under oath, "Talik". This Arabic word, roughly translated is "I divorce thee." A certificate of divorce will then be issued. During the three months after the proclamation, the husband has the option to revoke his proclamation, and the parties will remain married. In order for the wife to obtain a divorce, she must have court approval, and she must prove that she was physically or psychologically harmed.[3]
On January 7, 1999, Ms. Magda Amin filed a "Petition for Divorce, Custody, and Alimony As Well As Other Ancillary Matters" in East Baton Rouge Parish, Louisiana. On January 8, 1999, Dr. Bakhaty obtained a Certificate of Divorce in Egypt, and on January 10, 1999, he filed for a declaratory judgment of permanent custody of the minor child in Egypt.
On May 28, 1999, Dr. Bakhaty filed a Petition for Civil Warrant in East Baton Rouge, Louisiana, wherein he sought to obtain physical custody of Ahmed. There was no award of custody to Dr. Bakhaty, by any court, when the Petition for Civil Warrant was filed. In the Petition for Civil Warrant, Dr. Bakhaty alternatively requested that the Court place the child in the care of the Department of Health and Human Resources, pending a hearing on a Writ of Habeas Corpus. On June 1, 1999, *26 all matters pertaining to the Petition for Civil Warrant were stayed, and both parties were prohibited from removing the minor child from this Court's jurisdiction. Then, on June 15, 1999, in response to Ms. Amin's divorce petition, Dr. Bakhaty filed several exceptions, pertaining to subject matter jurisdiction, personal jurisdiction, lis pendens, res judicata, and insufficiency of service of process.
On November 23, 1999, Magda Amin filed a second request for custody, child support, and spousal support. In response, on January 10, 2000, Dr. Bakhaty filed an "Exception of Lack of Personal Jurisdiction, Lack of Subject Matter Jurisdiction, Insufficiency of Citation and Service of Process, and Lis Pendens."
The Egyptian suit, pertaining to child custody and child support, which was commenced after these proceedings, is still pending. To date, no final custody award has ever been rendered by any court in any country.
A trial of all of the above exceptions took place on March 9, 2000. After the submission of post-trial briefs, this Court took the matter under advisement.
On May 11, 2000, this Court overruled all of Dr. Bakhaty's pending exceptions. Judgment was rendered for the following reasons:

1. Exception of Subject Matter Jurisdiction over Child Custody, Child Support and Spousal Support

A. Child Custody
A court's subject matter jurisdiction is an issue that cannot be waived or conferred by the consent of the parties. La. C.C.P. art. 925. Dr. Bakhaty asserts that this Court lacks subject matter jurisdiction to adjudicate the custody of Ahmed Bakhaty under the Uniform Child Custody Jurisdiction Act. This Court disagrees.
The jurisdictional limitations imposed by the Uniform Child Custody Jurisdiction Act, La. R.S. 13:1700, et seq. (the "UCCJA") are equivalent to declarations of subject matter jurisdiction. Counts v. Bracken, 494 So.2d 1275 (La.App. 2nd Cir. 1986). In order for a Louisiana Court to have jurisdiction over the custody proceedings of a minor child, it must meet one of the jurisdictional requirements of the UCCJA at the time the request for custody is filed. Broadway v. Broadway, 25,012 (La. App. 2 Cir. 8/18/93), 623 So.2d 185. The UCCJA provides four bases for jurisdiction, and they are found in La. R.S. 13:1702(A), which provides:
"A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state
(i) is the home state of the child at the time of commencement of the proceeding, or

(ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state;
or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because
(i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and

(ii) there is available in this state substantial evidence concerning the *27 child's present or future care, protection, training, and personalrelationships; or
(3) The child is physically present in this state and
(i) the child has been abandoned or

(ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent;
or
(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and

(ii) it is in the best interest of the child that this court assume jurisdiction.
(Emphasis Added)
The first basis for jurisdiction under the UCCJA is known as "homestate jurisdiction." "Homestate" is defined as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period." La. R.S. 13:1701(5)[4].
Ms. Amin and Ahmed came to Louisiana in December 1998. Ms. Amin filed her first request for custody on January 7, 1999. Louisiana cannot be considered Ahmed's "homestate," as Ahmed had not lived in Louisiana for the requisite time period when Ms. Amin filed her initial request for custody. Therefore, this Court cannot assert "homestate jurisdiction."
However, it should be noted that there is no "state", as defined by the UCCJA (R.S. 13:1701(10)), which qualifies for "homestate" jurisdiction.
The second basis for jurisdiction under the UCCJA is the "significant connection" jurisdiction. When asserting "significant connection jurisdiction," the interests of the child, and not merely the convenience of the parties, should be considered. Renno v. Evans, 580 So.2d 945 (La.App. 2nd Cir.1991). The court that asserts jurisdiction must have optimum access to relevant evidence concerning the child and family. Id. Thus, only when maximum contacts (rather than the minimum contacts) exist should that state assume jurisdiction under this provision. Id.
At the time Ms. Amin filed for custody in January 1999, Ahmed had only lived in Louisiana for approximately one month. Prior to that, Ahmed had never been to Louisiana. At the time of filing, there were few records concerning Ahmed's medical and school history in Louisiana. His only connection to Louisiana was the presence of his mother's family, and the only evidence that was available in Louisiana concerned Ahmed's present home with his mother and her family, as well as the personal relationships that he developed during the month he had been here. Based on the evidence presented the maximum contacts, essential for "significant connection" jurisdiction, do not exist *28 in Louisiana (at the time of Ms. Amin's initial request for custody). Therefore, this Court cannot assert "significant connection" jurisdiction.
However, once again, it should be noted that there is no "state", as defined by the UCCJA (R.S. 13:1701(10)), which qualifies for "significant connection" jurisdiction.
"Emergency jurisdiction", the third basis for jurisdiction, is reserved for extraordinary circumstances and exists only if required by the immediate needs of the child due to abandonment, mistreatment, abuse, or neglect. Dillon v. Medellin, 409 So.2d 570 (La.1982). Under this provision, jurisdiction can be conferred when the child is present in this state and there exists an emergency necessitating the child's immediate protection. Renno v. Evans, 580 So.2d 945 (La.App. 2nd Cir. 1991). In this case, there has been no evidence of an emergency that necessitates Ahmed's immediate protection. Therefore, this Court cannot assert "emergency jurisdiction."
Finally, there is "residual jurisdiction," which allows a court of this state to assert jurisdiction when no other "state" has jurisdiction under any of the above provisions, and if this state's exercise of jurisdiction is in the best interest of the child. The UCCJA defines "state" as "any state, territory, or possession of the United States, the Commonwealth of Puerto Rico, and the District of Columbia." La. R.S. 13:1701(10).
As set forth above, this Court is satisfied that no other "state, as defined by the UCCJA, would have jurisdiction in accordance with La. R.S. 13:1702(A)(1), (2), or (3). This Court also believes that it would be in Ahmed's best interest for this Court to assume jurisdiction. When making an award of custody, this Court is compelled to consider Ahmed's best interest. See La. C.C. arts. 131 and 132. The only other forum that could possibly determine custody would be Egypt. However, the Egyptian Court is not compelled to consider the minor child's best interest. Dr. Bakhaty would have the absolute right to guardianship, as well as the right to physical custody. This Court believes that a parent's interest in a relationship with his or her child is a basic human right. State in Interest of A.C., 93-1125 (La.10/17/94), 643 So.2d 743. However, it is most likely that Ms. Amin will be deprived of a relationship with Ahmed if she is forced to return to Egypt to pursue custody or visitation rights, particularly in light of the fact that she has been convicted of removing the minor child from the territory of Egypt without Dr. Bakhaty's permission. Since the minor child has always lived with his mother, it would not be in his best interests to deprive him of a relationship with her at his age. Therefore, this Court believes that it is in Ahmed's best interest that this Court assume jurisdiction under the provisions set forth in La. R.S. 13:1702(A)(4).
Dr. Bakhaty has argued this Court should defer to the Egyptian Court, because this Court is required, under the UCCJA, to classify Egypt as Ahmed's "homestate" or "significant connection state." He bases this argument on La. R.S. 13:1722, which provides
"The general policies of this Part extend to the international area: The provisions of this Part relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody institutions rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons."
*29 Additionally, Dr. Bakhaty cites the Louisiana cases of McFaull v. McFaull, 560 So.2d 1013 (La.App. 4th Cir.1990), and Gay v. Morrison, 511 So.2d 1173 (La.App. 4th Cir.1987) in support of his position. However, a careful review of these cases shows that they are factually distinguishable from this case, and that they do not support Dr. Bakhaty's assertions.
In McFaull, the parties were married in Leningrad, Soviet Union in October 1985. Since that time, Mr. McFaull has resided in New Orleans, and Mrs. McFaull has resided in Leningrad. Mrs. McFaull visited Mr. McFaull several times in New Orleans. Mrs. McFaull then gave birth to their child in Leningrad. Mrs. McFaull and the minor child visited Mr. McFaull on several occasions. Mr. McFaull filed for divorce and custody in Orleans Parish, Louisiana. Mrs. McFaull filed an exception to the jurisdiction of the court. The Fourth Circuit Court of Appeal stated that "[a]lthough `state' is defined as any state, territory, or possession of the United States, the Commonwealth of Puerto Rico, and the District of Columbia, the general policies of the UCCJA extend to the international area and recognition and enforcement of custody decrees are extended to other countries if there has been reasonable notice and the opportunity to be heard." McFaull, at 1014. However, the Court ultimately held that the Orleans Parish Court had subject matter jurisdiction under the UCCJA to determine custody. Therefore, under McFaull, a Court is authorized (under La. R.S. 13:1722) to treat a foreign nation as a "state" under 13:1702(10), however, it is not mandated.
In Gay v. Morrison, supra, the parties were married in New Orleans, and eventually moved to Brazil, with their children. Several years later, Mrs. Morrison moved to New York. One year later, a Brazilian consent separation judgment was rendered which granted custody of the children on the marriage to Mr. Morrison. During the year after the Brazilian judgment of separation, Mrs. Morrison sued for custody in New York. The New York Court awarded custody to the father, and granted Mrs. Morrison specific visitation. Four years later, Mrs. Morrison moved to New Orleans. Again, Mrs. Morrison sued for custody of the children, but this time, she filed in Orleans Parish. Mr. Morrison, who was still residing in Brazil with the minor children at the time, filed an exception to the court's subject matter jurisdiction. Mrs. Morrison argued that Brazil was not a "state" under the UCCJA, hence it could not be the homestate of the child, nor the state with the most significant connection. The Fourth Circuit Court of Appeal disagreed, stating that "[t]o entertain that narrow interpretation would require that we ignore the status of the Brazilian court to which the mother willingly submitted her consent to the original custody decree." (Emphasis added) Id. at 1176. Under Gay v. Morrison, the Court concluded that a foreign nation could be considered a "state" under the UCCJA because the mother willingly consented to jurisdiction in the foreign country in the original custody decree. This is not true of this caseMs. Amin has never consented to a custody decree in Egypt. Therefore, this Court is not mandated to classify Egypt as the child's homestate (or significant connection state) under this case.
In addition to McFaull and Gay v. Morrison, Dr. Bakhaty cites a series of cases from other jurisdictions in the United States for his proposition that the term "state" under the UCCJA includes a foreign nation, and that a foreign nation can be a child's homestate. This Court has reviewed each of those cases in their entirety, and is not persuaded by Dr. Bakhaty's *30 argument. A court, in its discretion may find that a foreign country is a "state" under the UCCJA, and whether or not it will depends on the facts and circumstances of each particular case.
For instance, Dr. Bakhaty has cited Middleton v. Middleton, 227 Va. 82, 314 S.E.2d 362 (1984) for the proposition that it is the "seminal case holding that England is equivalent of statutory `homestate.'" In Middleton, the trial court concluded that it had jurisdiction, but declined to exercise it under the "principle that the general policies of the UCCJA `extend to the international arena.'" Id at 368. The Court further stated that it was "not reluctant to endorse an international deferral to the courts of England because `Virginia's jurisprudence is deeply rooted in the ancient precedents, procedures, and practices of the English system of justice."' Id at 368. Additionally, the Court believed that "the English procedural and substantive law of child custody was `reasonably comparable' to the law of Virginia." Id at 368.
Such is not the case here. This Court is reluctant to defer to an Egyptian court, because Egypt's child custody laws are at the opposite end of the spectrum to Louisiana's child custody laws. In Louisiana, joint custody is presumed to be in the best interest of the child, while in Egypt, the father has an absolute right to the guardianship and physical custody of a child.
Dr. Bakhaty has also cited Horlander v. Horlander, 579 N.E.2d 91 (Ind.App.1991) for the proposition that "the UCCJA applies to determine whether Indiana or France is `homestate.'" However, this assertion is misleading. In Horlander, the court concluded that Indiana had jurisdiction over the child custody dispute, but declined to exercise it, because France was the more convenient forum. Likewise, the Court was not concerned about deferring the matter to a French court because it involved a legal institution similar in nature to that of Indiana. Once again, this is not the case here. Egypt does not have a legal institution similar in nature to Louisiana.
In addition to the cases cited by Dr. Bakhaty that allowed a foreign nation to be considered a "state" under the UCCJA, there are also cases from other jurisdictions in the United States that refuse to apply the definition of "state" to include foreign countries. See Klien v. Klien, 141 Misc.2d 174, 533 N.Y.S.2d 211 (N.Y.1988) (holding that Israel is not a "state" under the UCCJA's definition of "state"); State ex rel. Rashid v. Drumm, 824 S.W.2d 497 (Mo.App.1992) (the legislature did not intend the word "state" to include a foreign country); and Schroeder v. Vigil-Escalera Perez, 76 Ohio Misc.2d 25, 664 N.E.2d 627.
Louisiana's UCCJA describes jurisdiction only in relation to jurisdiction of other "states." The definition of "states" does not cover foreign "states"; it only covers "any state, territory, or possession of the United States, the Commonwealth of Puerto Rico, and the District of Columbia." While this Court is authorized to treat Egypt as a "state", it is not mandated. This Court declines to treat Egypt as a "state" under the UCCJA.
La. R.S. 13:1707(A) provides: "If the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances." One of the many purposes behind this section is to deter abductions or other unilateral removals of children undertaken to obtain custody awards. See La. R.S. 13:1700(5).
*31 Dr. Bakhaty has also urged this Court to decline jurisdiction based on Ms. Amin's allegedly "reprehensible" behavior by her wrongful removal of the minor child from Egypt without his Dr. Bakhaty's permission. This Court does not believe that Ms. Amin wrongfully removed the child from Egypt or that she engaged in any other "reprehensible conduct". When Ms. Amin left Egypt, her purpose was to visit Dr. Bakhaty and her family. At the time she left Egypt, there were no custody proceedings pending anywhere. However, even if Ms. Amin engaged in "reprehensible conduct", this Court believes that "the imperative to discourage abduction and other violations of custody orders may, in extraordinary circumstances, be submerged to the paramount concern in all custody matters for the welfare of the child." Bergeron v. Bergeron, 492 So.2d 1193, 1203 (La.1986). See also Gay v. Morrison, 511 So.2d 1173 (La.App. 4th Cir.1987).
Therefore, this Court finds that it has subject matter jurisdiction over these custody proceedings pursuant to La. R.S. 13:1702(A)(4). This Court will exercise that jurisdiction. Dr. Bakhaty's exception of lack of subject matter over the child custody proceedings is overruled at his cost.
Additionally, it should be noted that at the time Ms. Amin filed her second request for custody on November 23, 1999, Louisiana had become Ahmed's "homestate", and most likely, the "significant connection" state. Therefore, Dr. Bakhaty's exception of subject matter jurisdiction filed pursuant to Ms. Amin's second request for custody is overruled at his cost.

B. Child Support and Spousal Support
Dr. Bakhaty has argued that this Court lacks subject matter jurisdiction to enter an order of child support, as the jurisdiction to enter a child support order is exclusively found under the provisions of the Uniform Interstate Family Support Act ("UIFSA"). However, the jurisdictional bases found in UIFSA pertain to personal jurisdiction, and not subject matter jurisdiction. See Art. 1302.1.; andState, Dept. of Social Services v. Matthews, 96-711 (La. App. 5th Cir.1/28/97) 688 So.2d 137.
This Court has subject matter jurisdiction over the issues of child support and spousal support pursuant to La. R.S. 13:1401(A)(1). Dr. Bakhaty has argued that Ms. Amin cannot be considered a resident of Louisiana due to the status of her expired visa. Ms. Amin's asylum proceedings are currently pending before the Immigration and Naturalization Service. The status of Ms. Amin's visa is of no relevance to this Court. Ms. Amin testified that she intends to remain in Baton Rouge, with her family, provided the Immigration and Naturalization Service allows her to remain. Domicile consists of two elements, namely residence and the intent to remain in place. Veillon v. Veillon, 517 So.2d 936, 940 (La.App. 3rd Cir.), writ denied, 519 So.2d 105 (La.1987). Ms. Amin's testimony established these two elements. Therefore, this Court finds Ms. Amin present domicile to be Baton Rouge, Louisiana.
Additionally, even if Ms. Amin had not established her domicile in Baton Rouge, she would still have the right to claim child support on behalf of Ahmed. Louisiana would certainly have an interest in ensuring that a minor child, who is a citizen of the United States and who resides within its borders, is supported by his parents, and therefore, would not have to receive public assistance.
Therefore, both of Dr. Bakhaty's exceptions of subject matter jurisdiction over *32 child support and spousal support are overruled at his cost.

2. Exception of Personal Jurisdiction Over Child Custody, Child Support, and Spousal Support

A. Child Custody
A Louisiana court may adjudicate custody under La. R.S. 13:1700, et seq. without acquiring personal jurisdiction over an absent party. Once the subject matter jurisdiction of the Louisiana Court has been established, the resulting custody decree is binding if the absent party has been given notice and opportunity to be heard, as provided by La. R.S. 13:1704. Gay v. Morrison, 511 So.2d 1173 (La.App. 4th Cir.1987). Therefore, there is no prerequisite of personal jurisdiction in a proceeding brought under the UCCJA. The UCCJA simply requires that notice be given, or at the very least, a good faith attempt to notify those parties who assert custody rights. Anderson v. Anderson, 98-1012, (La.App.4 Cir.8/26/98), 718 So.2d 582.
This Court has already found that it has jurisdiction under the UCCJA to adjudicate custody. Therefore, all that is required is that Dr. Bakhaty be given notice of the proceedings. Dr. Bakhaty has adequately received notice of these proceedings. After all, he hired a Louisiana attorney, he has filed these exceptions, and he appeared at the trial of these exceptions. Therefore, Dr. Bakhaty's exception of lack of personal jurisdiction over the child custody proceedings is overruled at his cost.

B. Child Support and Spousal Support
Dr. Bakhaty has filed an exception of personal jurisdiction. The basis of the exception is that the Court lacks personal jurisdiction over him to render any order of support because he lacks the requisite minimum contacts with Louisiana and because he was never personally served with any pleadings.
The UCCJA does not apply to support matters. La. R.S. 13:1701(2). Accordingly, the UCCJA provisions relating to jurisdictional limitations in interstate custody disputes cannot be extended to child support matters. Girau v. Girau, 545 So.2d 670 (La.App. 5 Cir.1989).
A judgment for child support is a personal judgment and a court has legal authority and power to render such a judgment only if it has jurisdiction over the person or the party against whom the judgment is sought. Imperial v. Hardy, 302 So.2d 5 (La.1974). Therefore, in order for this court to set child support, Louisiana must have personal jurisdiction over Dr. Bakhaty to render a money judgment.
Personal jurisdiction may attach through compliance with Louisiana Code of Civil Procedure article 6 or through one of several statutory bases, including UIFSA (Children's Code article 1302.1) and the Long-Arm Statute (La. R.S. 13:3201).
Children's Code article 1302.1 provides, in part:
In a proceeding to establish, enforce, or modify a support order or to determine parentage, a tribunal of this state may exercise personal jurisdiction over a nonresident individual, or his tutor, in any of the following situations:
* * *
(8) There is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction.
Additionally, La. R.S. 13:3201(B) provides: "In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on *33 any basis consistent with the constitution of this state and of the Constitution of the United States."
In International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), the United States Supreme Court first enunciated the due process test to subject a nonresident defendant to a personal judgment. This test was that the defendant had to have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.
This test has evolved into a two-part test: the minimum contacts prong and the fairness prong. The minimum contacts prong is satisfied by a single act or actions by which the defendant "purposefully avails itself the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Burger King v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). The non-resident's purposeful availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).
The fairness prong centers around the fairness of the assertion of jurisdiction. Once the plaintiff meets his burden of proving minimum contacts, "a presumption of reasonableness of jurisdiction arises" and "[t]he burden then shifts to the opposing party to prove the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice as to overcome the presumption of reasonableness created by the defendant's minimum contacts with the forum." de Reyes v. Marine Management & Consulting, 586 So.2d 103, 107 (La.1991). Additionally, when determining whether it is fundamentally fair to exercise jurisdiction over a defendant, the Court must examine the defendant's burden, the forum state's interest, the plaintiff's interest in convenient and effective relief, the judicial system's interest in efficient resolution of controversies, and the state's shared interest in furthering fundamental social policies. Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).
Dr. Bakhaty's Petition for Civil Warrant was an act by which he purposefully availed himself the privilege of conducting activities within Louisiana. A Petition for a Civil Warrant in custody matters is generally governed by La. R.S. 9:343.[5] Additionally, when a Petition for Civil Warrant is requested, a party's submission to the Court's jurisdiction is *34 limited for the sole purpose of obtaining the civil warrant. However, in this case, there was no previous custody order from any court. Dr. Bakhaty's request for the return of the child was tantamount to a request for custody and/or visitation. Furthermore, in his Petition for Civil Warrant, Dr. Bakhaty alternatively requested that the Court place the minor child in the custody of the Department of Health and Human Resources until a hearing on a Writ of Habeas Corpus could be heard.
Based on Dr. Bakhaty's actions, this Court finds that Dr. Bakhaty has purposefully availed himself the privilege of conducting activities within Louisiana, and he has invoked the benefits and protections of Louisiana's laws. Based on these actions, Dr. Bakhaty should have reasonably anticipated being haled into court in Louisiana.
Since Ms. Amin has met her burden of proving Dr. Bakhaty's minimum contacts, Dr. Bakhaty must prove that the assertion of jurisdiction would be so unreasonable in light of traditional notions of fair play and substantial justice. This Court believes that Dr. Bakhaty has not proven that the assertion of jurisdiction would be unreasonable and unfair. Louisiana has a significant interest in ensuring that the people residing within its borders are supported. Ms. Amin and the minor child reside in Louisiana, and she is entitled to convenient and effective relief.
The evidence presented at trial shows that Dr. Bakhaty has sufficient minimum contacts with Louisiana such that a Louisiana court can exercise personal jurisdiction over him, and such exercise of jurisdiction appears to be fundamentally fair. Therefore, all of Dr. Bakhaty's exceptions of lack of personal jurisdiction as to child support and spousal support are hereby overruled at his cost.

3. Exception of Lis Pendens regarding child custody, child support, and spousal support.
Dr. Bakhaty has filed an exception of lis pendens regarding the child custody, child support, and spousal support proceedings on the basis that there are custody proceedings currently pending in Egypt.
In Louisiana, lis pendens is defined by Louisiana Code of Civil Procedure article 531 and 532. Article. 531 provides:
When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925. When the defendant does not so except, the plaintiff may continue the prosecution of any of the suits, but the first final judgment rendered shall be conclusive of all.
Article 532 provides:
When a suit is brought in a Louisiana court while another is pending in a court of another state or of the United States on the same transaction or occurrence, between the same parties in the same capacities, on motion of the defendant or on its own motion, the court may stay all proceedings in the second suit until the first has been discontinued or final judgment has been rendered.
Neither of these two articles apply to this case, as the alleged pending proceedings are in Egypt, and not in another "Louisiana court," "court of another state," on "court of the United States." Additionally, Ms. Amin commenced her action on January 7, 1999. According to the record, Dr. Bakhaty commenced his divorce proceedings on January 8, 1999 and the custody proceedings on January 10, 1999. If an exception of lis pendens exists, then it *35 would be in the Egyptian Court and not this Court, as these proceedings were commenced prior to the Egyptian proceedings. Therefore, all of Dr. Bakhaty's exceptions of lis pendens are hereby overruled at his cost.

4. Exception of Res Judicata pertaining to child custody, child support, and spousal support
Dr. Bakhaty has filed an exception of res judicata, regarding the divorce, child custody, child support, and spousal support proceedings on the basis that a final certificate of divorce has already been rendered between the parties in Egypt.
This Court has already sustained the exception of res judicata as to the divorce. However, the exception of res judicata, as it pertains to child custody, child support, and spousal support is still at issue.
In Louisiana, res judicata is defined by La. R.S. 13:4231, which provides:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3) A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
A valid, final judgment pertaining to child custody, child support, or spousal support has never been rendered by any court between Dr. Bakhaty and Ms. Amin. Therefore, Dr. Bakhaty's exceptions of res judicata are without merit, and are hereby overruled at his cost.

5. Exception of Insufficiency of Service of Process as to child custody, child support and spousal support.

A. Child Custody
Dr. Bakhaty has filed an exception of insufficiency of service of process. However, in a custody proceeding, once the subject matter of the Louisiana Court has been established, all that is required is that that notice be given, or at the very least, a good faith attempt to notify those parties who assert custody rights. Anderson v. Anderson, supra.
The record contains an affidavit of Long Arm Service via certified mail Based on the actions that Dr. Bakhaty has undertaken to defend the custody suit this Court is satisfied that Dr. Bakhaty has adequately received notice of the pending custody proceedings.

B. Child Support and Spousal support
Since this Court has asserted personal jurisdiction over Dr. Bakhaty under the Long-Arm Statute (La. R.S. 13:3201(B)), service must be made in accordance with La. R.S. 13:3204.
La. R.S. 13:3204 provides:
A. A certified copy of the citation and of the petition in a suit under R.S. 13:3201 shall be sent by counsel for the plaintiff, or by the plaintiff if not represented by counsel, to the defendant by *36 registered or certified mail, or actually delivered to the defendant by commercial courier, when the person to be served is located outside of this state or by an individual designated by the court in which the suit is filed, or by one authorized by the law of the place where the service is made to serve the process of any of its courts of general, limited, or small claims jurisdiction.
B. If service of process cannot be made on the nonresident by registered or certified mail or by actual delivery, the court shall order that service of process be made on an attorney at law appointed to represent the defendant pursuant to Code of Civil Procedure Article 5091.
C. Service of process so made has the same legal force and validity as personal service on the defendant in this state.
As to Ms. Amin's initial request for child support and spousal support (in her Petition for Divorce), the record contains an affidavit of Long-Arm Service, via certified mail, return receipt requested. The original green card, which shows that the certified mail was signed for, is also in the record. This Court finds Dr. Bakhaty was validly served with Ms. Amin's Petition for Divorce under the Louisiana Long-Arm Statute.
As to Ms. Amin's second request for child support and spousal support, the record also contains an affidavit of Long-Arm Service, via certified mail, return receipt requested. However, the original envelope and green card are also in the record due to the fact that the certified mail was returned as "unclaimed." Dr. Bakhaty testified that the address on the "unclaimed" piece of mail was his address.
Based on the evidence presented, the Court believes that Dr. Bakhaty received notice of the certified mail, yet refused to accept it in an attempt to avoid proper service. The fact that a non-resident defendant refused to receive registered mail service, as effected by the Long-Arm Statute, does not affect its validity. A defendant cannot be allowed to defeat proper service by simply refusing to accept the letter. Ahlers v. Ahlers, 384 So.2d 474 (La.App. 2 Cir.1980); see also McFarland v. Dippel, 99-0584, 756 So.2d 618 (La.App. 1st Cir.3/3/00). Therefore, this Court believes that Dr. Bakhaty was validly served with Ms. Amin's second request for child support and spousal support.
Therefore, Dr. Bakhaty's exceptions of insufficiency of service of process are hereby overruled at his cost.
Thus done, signed and mailed at Baton Rouge, Louisiana on this 30th day of May, 2000.
 /s/ Toni Higginbotham
 Toni Higginbotham, Judge
 The Family Court
 Division "C"
FITZSIMMONS, Judge, dissenting with reasons.
I respectfully dissent from the majority's holding that the court possessed subject matter jurisdiction in this case. While empathizing with the desire to protect the child from the harsh remedies available pursuant to Egyptian law, the prerequisites for jurisdiction are lacking. The Uniform Child Custody Jurisdiction Act (UCCJA) establishes a basis for subject matter jurisdiction, pursuant to La. R.S. 13:1702 A, if the following applies:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before *37 commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
The trial court and this majority declined to treat Egypt as a "state" under the UCCJA, finding that determination to be a discretionary one. Thereupon, the majority has attributed subject matter jurisdiction on the fourth delineated ground of residual jurisdiction, i.e., that no other state, as defined in the UCCJA, could maintain jurisdiction, and it would be in Ahmed's best interest for the Louisiana court to assume jurisdiction.
The majority is pressed in this instance to find that a non-resident alien could seek the refuge of the Louisiana court system. Yet, prior to this action; the mother had never been in this state; the couple had been married in Egypt and neither parent had ever previously resided within Louisiana; the mother and the father were never together in Louisiana; the son had never previously been to the United States; the mother left Egypt under an allegedly forged passport and was visiting her relatives in Louisiana; she was found guilty of violating Egyptian law; her husband remained in another state; and the mother had stayed in Louisiana only a month prior to filing a lawsuit for divorce, sole custody and child support.
In this instance, we are not dealing with the laws of another state; thus, the UCCJA should have no application whatsoever. We are, instead, confronted with the laws and contacts of another country applicable to an Egyptian marriage, Egyptian citizenship of all involved parties, long-term residency in Egypt of both the mother and son, and insufficient contacts with East Baton Rouge and Louisiana at the time that Mrs. Amin filed her lawsuit.
These circumstances are distinguishable from the factual setting in McFaull v. McFaull, 560 So.2d 1013 (La.App. 4th Cir. 1990). In McFaull, the husband had resided in New Orleans for five years following the marriage, and the married couple had been living together in New Orleans for four months, when the wife ultimately abandoned him to return to the Soviet Union. In contrast, in the case presently before us, there does not exist a sufficient nexus between the parties to this state to establish subject matter jurisdiction in the East Baton Rouge Parish Family Court.
NOTES
[1] Ahmed has a United States passport issued in April 1995, indicating he also is a United States citizen. However, the child's citizenship is not a determinative factor in this case.
[2] The petition for divorce, custody, alimony, and other matters was filed by Magda Sobhy Ahmed Amin, "on behalf of herself and her child Ahmed Sayed Bakhaty." The child was later dismissed from the suit.
[3] An attachment to the petition for civil warrant shows that on February 12, 1999, Dr. Bakhaty brought a "civil misdemeanor" action in the Egyptian court, charging Ms. Amin with forgery of Ahmed's travel documents. In a March 9, 2000 hearing before the trial court in the case we are reviewing, Dr. Bakhaty submitted evidence of a judgment in the Egyptian case, sentencing Ms. Amin in absentia to one week in prison and payment of damages and court costs. He also submitted documents showing that, in a later criminal proceeding stemming from his complaints, Ms. Amin was convicted in absentia and sentenced to pay a fine of 500 Egyptian pounds and to serve three years imprisonment "with labour."
[4] In essence, this assignment of error restates Dr. Bakhaty's arguments on his exceptions of lack of personal and subject matter jurisdiction.
[5] LSA-R.S. 13:1700-22.
[6] In particular, we agree with the trial court that it acquired personal jurisdiction over Dr. Bakhaty when he filed his "Petition for Civil Warrant," and thus purposefully sought the assistance of the Louisiana courts and laws to obtain custody of Ahmed. Because Dr. Bakhaty did not already have such custody by order of any court, he did not meet the statutory requisites for such a warrant and cannot invoke that statute's limitations on jurisdiction. See LSA-R.S. 9:343(A); LSA-R.S. 13:3201(B); LSA-Ch.C. art. 1302.1(8).
[7] Mr. Zohdy also acted as Ms. Amin's attorney in some of the initial stages of this proceeding, including assisting her in drawing up the petition. As part of his assignment of error, Dr. Bakhaty claims the court erred in refusing to allow discovery through the deposition of Mr. Zhody concerning his actions on behalf of Ms. Amin. However, the portions of the record sent to this court do not include the transcript of the hearing at which the discovery matters were resolved. The record does contain the court's judgment of January 27, 2000, as well as written reasons. The court found Dr. Bakhaty had failed to present sufficient evidence of all four factors required by Article 508 of the Louisiana Code of Evidence to justify the deposition of a party's attorney. The court also concluded that extraordinary circumstances were not shown. LSA-C.C.P. art. 1452(B). We find no legal error in the court's refusal to order Mr. Zohdy to submit to a deposition, nor do we find any prejudice to Dr. Bakhaty's case due to the court's decision.
[8] Ms. Aby is an expert on Egyptian/Islamic family law who testified on behalf of Dr. Bakhaty.
[9] Dr. Bakhaty cites cases from other jurisdictions in which Islamic family law was addressed in the context of applying the UCCJA. See Ivaldi v. Ivaldi, 147 N.J. 190, 685 A.2d 1319 (1996); Hosain v. Malik, 108 Md.App. 284, 671 A.2d 988 (Md.1996). These cases, while instructive, are factually dissimilar and are not binding on the trial court or this court, which must decide on the particular facts of the matter being considered.
[10] Contrary to Dr. Bakhaty's argument, the best interest of the child is made part of the jurisdictional determination under the "residual jurisdiction" provision of the UCCJA. LSA-R.S. 13:1702(A)(4)(ii).
[1] While this home is titled in Dr. Bakhaty's name, his mother resides in it. All of the contents of this home belong to Dr. Bakhaty's mother.
[2] This summary of Egyptian family law is based on the testimony of Ms. Patricia Apy, Dr. Bakhaty's expert on Islamic family law.
[3] On March 1, 2000, a new law took effect in Egypt that makes it easier for a woman to obtain a divorce.
[4] "State" is defined as "any state, territory, or possession of the United States, the Common-wealth of Puerto Rico, and the District of Columbia." La. R.S. 13:1701(10)
[5] La. R.S. 9:343 provides:

A. Upon presentation of a certified copy of a custody and visitation rights order rendered by a court of this state, together with the sworn affidavit of the custodial parent, the judge, who shall have jurisdiction for the limited purpose of effectuating the remedy provided by this Section by virtue of either the presence of the child or litigation pending before the court, may issue a civil warrant directed to law enforcement authorities to return the child to the custodial parent pending further order of the court having jurisdiction over the matter.
B. The sworn affidavit of the custodial parent shall include all of the following:
(1) A statement that the custody and visitation rights order is true and correct.
(2) A summary of the status of any pending custody proceeding.
(3) The fact of the removal of or failure to return the child in violation of the custody and visitation rights order.
(4) A declaration that the custodial parent desires the child returned.