798 So.2d 75 (2001)
Magda Sobhy Ahmed AMIN
v.
Abdelrahman Sayed BAKHATY.
No. 2001-C-1967.
Supreme Court of Louisiana.
October 16, 2001.
*77 Randy J. Fuerst, Lake Charles, Stephen M. Irving, Baton Rouge, Counsel for Applicant.
Jack M. Dampf, Gregory P. Aycock, Baton Rouge, Counsel for Respondent.
TRAYLOR, J.[*]
We granted a writ of certiorari to determine whether a Louisiana court may exercise jurisdiction to determine custody and support for an Egyptian child, when the Egyptian father is a naturalized United States citizen, with his primary residence in New Jersey, and the Egyptian mother presently resides in Baton Rouge, Louisiana. We conclude that the lower courts properly determined jurisdiction under both the Uniform Child Custody Jurisdiction Act (UCCJA), La.Rev.Stat. § 13:1700 et seq., and traditional notions of personal jurisdiction in the circumstances surrounding this case. Accordingly, we affirm the judgment of the court of appeal and remand to the trial court for further proceedings.

FACTS AND PROCEDURAL HISTORY
Plaintiff, Magda Amin, and defendant, Abdelrahman Bakhaty, were married on November 21, 1991 in Egypt. Ms. Amin is an Egyptian national, currently residing in *78 Baton Rouge, Louisiana. Dr. Bakhaty holds dual citizenship[2] in the United States and Egypt, with homes in New Jersey and Egypt. One child, Ahmed, was born of the marriage between Dr. Bakhaty and Ms. Amin on August 23, 1992 in Egypt. Ahmed has resided with his mother since his birth.
During the marriage, Ms. Amin lived with her father in Egypt, while Dr. Bakhaty spent the majority of his time in New Jersey, where he maintains a medical practice in anesthesiology. Dr. Bakhaty would visit Egypt at most six times a year, for a week to ten days at a time. When he would visit Egypt, he stayed in a hotel or at his mother's home.[3]
In early December 1998, prior to any litigation being instituted by either party, Ms. Amin traveled from Egypt to the United States with her son, Ahmed. She went first to New York and then came to Baton Rouge, Louisiana, where her sisters live. When Ms. Amin arrived in the United States, she repeatedly contacted Dr. Bakhaty by telephone. Based on their telephone conversations, Ms. Amin believed that Dr. Bakhaty was going to come meet her in Baton Rouge, so, thereafter, she searched for an apartment in Baton Rouge for them to reside. However, Dr. Bakhaty never came to meet his wife in Baton Rouge; instead he flew to Egypt to investigate how Ms. Amin accomplished her departure from Egypt. Several days later, Ms. Amin's father contacted her to inform her that Dr. Bakhaty brought criminal charges against her in Egypt for removing the minor child from Egypt without his permission, and for fraud in her procurement of Ahmed's Egyptian passport.[4] She has since been convicted in Egypt for these alleged crimes.[5]
On January 7, 1999, Ms. Amin filed suit against Dr. Bakhaty in East Baton Rouge Parish Family Court, seeking a divorce, sole custody of Ahmed, and child support. The petition stated that Dr. Bakhaty was a United States citizen domiciled in New Jersey, he had abandoned the marriage and refused to support her and the child, and the parties had been physically separated since June 1998. On January 8, 1999, Dr. Bakhaty obtained a Certificate of Divorce in Egypt. Two days later, he filed for a declaratory judgment of permanent custody of the minor child in Egypt.
Subsequently, on May 28, 1999, Dr. Bakhaty filed a Petition for Civil Warrant in East Baton Rouge Parish Family Court seeking to obtain physical custody of Ahmed.[6] In his petition, he claimed that he was a citizen of Egypt; that he had not given approval for his spouse and minor *79 child to validly obtain travel documents,[7] which is required by Egyptian law; and that he had no advance notice of her plans. In support of his claim for custody of Ahmed, he stated that under Egyptian law, both the temporary guardianship and physical custody of Ahmed were exclusively with him, and that an order to confirm his custody was pending before the Egyptian court. Alternatively, Dr. Bakhaty requested that the trial court place the child in the care of the Department of Health and Human Resources, pending a hearing on a Writ of Habeas Corpus. In fact, there was no award of custody to Dr. Bakhaty by any court when the Petition for Civil Warrant was filed.
On June 1, 1999, all matters pertaining to the Petition for Civil Warrant were stayed, and both parties were prohibited from removing the minor child from the trial court's jurisdiction. The parties surrendered their passports, and those of the child, to the court.
On June 15, 1999, Dr. Bakhaty filed exceptions to Ms. Amin's petition alleging lack of subject matter jurisdiction, lack of personal jurisdiction, insufficiency of service of process, lis pendens, and res judicata based on the Egyptian proceedings. On November 23, 1999, Ms. Amin filed a second petition, requesting sole custody of Ahmed and admitting that she and Dr. Bakhaty had been divorced on January 8, 1999, in Cairo, Egypt. She also requested child support, retroactive to the date of her initial petition, and periodic support for herself until she could find employment.
The trial court held a hearing on Dr. Bakhaty's exceptions on March 9, 2000. At that hearing, the parties testified along with two experts offered by Dr. Bakhaty. Ms. Patricia Aby testified as an expert on Islamic law relating to international child custody disputes and the application of the UCCJA. Mark Lazarre testified as an expert on procedures for immigration and naturalization. In addition, the parties submitted numerous documents to the court, including Egyptian documents in Arabic with translations. At that hearing, the court orally granted Dr. Bakhaty's exception of res judicata based on the parties' stipulation that the Egyptian divorce was final.
Without ruling on the remaining exceptions, the trial court held a subsequent hearing on May 30, 2000, to determine provisional custody and support. In a judgment dated June 20, 2000, the trial judge denied Dr. Bakhaty's exceptions, and granted interim custody to Ms. Amin, fixed child support in the amount of $850 per month, ordered Dr. Bakhaty to provide medical coverage for Ahmed, and ordered that Ahmed's residence remain in East Baton Rouge Parish pending further custody and support proceedings.[8]
In written reasons for judgment, the trial court declined to treat Egypt as a "state" under the UCCJA, finding that determination to be a discretionary one. Rather, the trial court asserted subject matter jurisdiction on the fourth delineated ground of residual jurisdiction, i.e., that no other state could maintain jurisdiction, and it would be in Ahmed's best interest for the Louisiana court to assume jurisdiction. *80 See La.Rev.Stat. § 13:1702(A)(4). While acknowledging that Ms. Amin's departure from Egypt occurred under "questionable" circumstances, the trial court rejected Dr. Bakhaty's argument that the behavior rose to the level of reprehensible conduct sufficient to decline jurisdiction under the UCCJA.
On personal jurisdiction, the trial court reasoned that Dr. Bakhaty's Petition for Civil Warrant was an act by which he purposefully availed himself of the privilege of conducting activities within Louisiana. Regarding service of process, the trial court concluded that Dr. Bakhaty had adequate notice of the pending custody proceeding as evidenced by his actions, and notice of the support issues through service under the Long-Arm Statute.
Dr. Bakhaty appealed. On appeal, the First Circuit affirmed the trial court's judgment, reasoning that the factual findings of the trial court were fully supported by the evidence in the record, and thus, not subject to reversal based on manifest error. Amin v. Bakhaty, 00-2710 (La. App. 1 Cir. 5/11/01), ___ So.2d ___, 2001 WL 499007. Further, the court of appeal found no error of law in the trial court's application of the UCCJA, and adopted the trial court's written reasons in their entirety. Id. Judge Fitzsimmons dissented, arguing that the UCCJA should have no application whatsoever; rather, the prerequisites for jurisdiction were lacking because the facts of the case failed to establish a sufficient nexus between the parties and Louisiana for purposes of subject matter jurisdiction. We granted a writ of certiorari to review the lower courts' holdings. Amin v. Bakhaty, 01-1967 (La.7/18/01), 794 So.2d 832.

ANALYSIS
This case concerns the application of the Uniform Child Custody Jurisdiction Act (UCCJA), La.Rev.Stat. § 13:1700, et seq. to an international custody dispute involving Louisiana and Egypt. For the reasons that follow, we agree with the lower courts' conclusion that Ahmed's interests are best served by the trial court's exercise of jurisdiction over this matter.

I. Trial Court's Jurisdiction Over Child Custody

Jurisdiction Under the UCCJA
Jurisdiction over the subject matter of a controversy is "the legal power and authority of a court to hear and determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted." La.Code Civ. Proc. art. 2. Subject matter jurisdiction is created by the constitution or legislative enactment, see, e.g., La. Const. Art. 5, and cannot be waived or conferred by the consent of the parties, see La.Code Civ. Proc. arts. 3 & 925. In East Baton Rouge Parish, the family court has legislatively been given exclusive jurisdiction to hear "all actions for divorce, ... spousal and child support, and custody and visitation of children, as well as of all matters incidental to any of the foregoing proceedings...." La.Rev. Stat. § 13:1401(A)(1).
The UCCJA grafts a second tier of inquiry onto the question of subject matter jurisdiction for Louisiana courts considering child custody issues. Thus, a Louisiana court may have general subject matter jurisdiction, but must decline that jurisdiction based on jurisdictional limitations imposed by the UCCJA. See La.Rev.Stat. 13:1702(A) (preamble); State ex rel. Rashid v. Drumm, 824 S.W.2d 497, 501 (Mo. App.1992) (describing the UCCJA as a procedural statute that grants no new substantive rights to the parties, but merely determines the appropriate forum). Although likened to subject matter jurisdiction, *81 the choice of the optimum jurisdiction to resolve custody battles under the UCCJA actually focuses on the strength of connections between the minor child and the state, more akin to a personal jurisdiction analysis. However, our lower courts have generally approached the limitations imposed by the UCCJA as equivalent to declarations of subject matter jurisdiction which mandate that the jurisdictional requirements of the UCCJA be met when the custody request is filed. See Miller v. Harper, 99-316 (La.App. 3 Cir. 10/13/99), 747 So.2d 642, 644; Renno v. Evans, 580 So.2d 945, 948 (La.App. 2 Cir.1991).
The UCCJA provides four alternatives as a basis for a state to assert jurisdiction: (1) "home state" jurisdiction; (2) "significant connection" jurisdiction; (3) "emergency" jurisdiction; and (4) "residual" jurisdiction. See La.Rev.Stat. § 13:1702(A).[9] Applying the UCCJA to the facts in this case, the trial court correctly determined that Louisiana cannot be considered Ahmed's "home state"[10] because Ms. Amin filed her first request for custody only a month after arriving in Louisiana. Similarly, the trial court found that Ahmed had not been in Louisiana long enough, and had no prior contact with Louisiana, to provide evidence concerning the child's care, training, well being, and personal relationships for "significant connection" jurisdiction. The parties do not dispute that the trial court lacked a basis to assert "emergency jurisdiction," which is available only under extraordinary circumstances of abandonment, mistreatment, abuse, or neglect. See Dillon v. Medellin, 409 So.2d 570, 575 (La.1982); Renno, 580 So.2d at 950.
However, the trial court asserted a basis for subject matter jurisdiction under "residual jurisdiction," La.Rev.Stat. § 13:1702(A)(4), by concluding that no other "state," as defined under the UCCJA,[11] had jurisdiction under any of the above *82 provisions and Louisiana's exercise of jurisdiction would be in the best interest of the child. In assuming jurisdiction under the residual jurisdiction clause, the trial court reasoned:
When making an award of custody, this Court is compelled to consider Ahmed's best interest. See La. C.C. arts. 131 and 132. The only other forum that could possibly determine custody would be Egypt. However, the Egyptian Court is not compelled to consider the minor child's best interest. Dr. Bakhaty would have the absolute right to guardianship, as well as the right to physical custody. This Court believes that a parent's interest in a relationship with his or her child is a basic human right. State in Interest of AC., 93-1125 (La.10/17/94), 643 So.2d 743. However, it is most likely that Ms. Amin will be deprived of a relationship with Ahmed if she is forced to return to Egypt to pursue custody or visitation rights, particularly in light of the fact that she has been convicted of removing the minor child from the territory of Egypt without Dr. Bakhaty's permission. Since the minor child has always lived with his mother, it would not be in his best interests to deprive him of a relationship with her at his age. Therefore, this Court believes that it is in Ahmed's best interest that this Court assume jurisdiction under the provisions set forth in La. R.S. 13:1702(A)(4).
An analysis of the provisions of the UCCJA, the statute's stated purpose, and review of other jurisdictions applying the UCCJA leads this Court to the same conclusion.

Purpose of the UCCJA
The purpose of the UCCJA serves to limit the potential for multiple custody decrees in various states. As stated by this Court in Revere v. Revere, 389 So.2d 1277 (La.1980):
The Uniform Child Custody Jurisdiction Law was proposed in an effort to have states impose uniform legislative rules on themselves regarding jurisdiction in child custody cases. A custody decree in one state is subject to modification not only by the courts of that state, but also by the courts of another state, since the Full Faith and Credit clause has limited application in custody cases. New York ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947). In an age of fluid population trends many cases are presented in which jurisdiction may be concurrent in several states. In order to provide some stability to reasoned custody decrees by discouraging relitigation, to deter custody determinations by physical abduction, to avoid jurisdictional competition and conflicting custody decrees in several states, and primarily to attain the security of home environment necessary for a child's well being, the National Conference of Commissioners proposed the uniform law adopted in Louisiana by Act 513 of 1978.
Id. at 1278-79.
In adhering to the purpose of the UCCJA, some of our lower courts have reasoned that the jurisdictional rules of § 13:1702(A) are listed in the statute in descending preferential order. Renno, 580 So.2d at 948; Snider v. Snider, 474 So.2d 1374 (La.App. 2d Cir.1985). While this Court stated that deference should be given to the "home state" in general as the state "in the best position for evidence gathering and for exercising continuity of control," we have recognized that concurrent jurisdiction under two or more statutory standards for jurisdiction can exist in different states without requiring deference *83 between them. Revere, 389 So.2d at 1279-80.
Equally clear, however, is that § 13:1702(A) serves to limit jurisdiction rather than proliferate it. See La.Rev. Stat. 13:1700(A); Broadway v. Broadway, 623 So.2d 185 (La.App. 2 Cir.1993). When two states can legitimately claim a basis to assert jurisdiction under § 13:1702(A), the law requires a comparative determination regarding which jurisdiction will serve the best interests of the child. See, e.g., La Rev. Stat. § 13:1700(A)(2) (listing purpose to decide custody by "state which can best decide the case in the interest of the child"); La.Rev.Stat. § 13:1706(C) (providing that determination of inconvenient forum requires consideration whether "it is in the interest of the child that another state assume jurisdiction"); La.Rev.Stat. § 13:1707(B) (allowing a court to decline jurisdiction based on improper conduct if "just and proper under the circumstances").

Application of the UCCJA in the International Context
Dr. Bakhaty argues that the trial court erred when it found that no other "state" would have jurisdiction in accordance with La.Rev.Stat. § 13:1702(A)(1), (2), or (3). Dr. Bakhaty asserts that the court lacked subject matter jurisdiction to adjudicate the custody of Ahmed under the UCCJA because Egypt is both the "home state" and the state with "significant connections" to Ahmed, and the UCCJA requires recognition of foreign states like those of sister states in the U.S.
Dr. Bakhaty bases this argument on La. Rev.Stat. § 13:1722, which provides:
The general policies of this Part extend to the international area. The provisions of this Part relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody institutions rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons.
We agree with Dr. Bakhaty's argument that the above statutory language allows the trial court to consider a foreign nation to be a "state." However, it does not follow that the statutory language mandates recognition of a foreign jurisdiction as a "state" for purposes of determining jurisdiction without regard to the best interest of the child.
In this case, the trial court recognized its authority to treat Egypt as a "state," but concluded that recognition was not mandated under the UCCJA, and refused to decline jurisdiction on that basis. We find no error in that legal conclusion. A court in its discretion may find that a foreign country is a "state" under the UCCJA, and whether or not it will depends on the facts and circumstances of each particular case.
Our review of prior cases in Louisiana supports this conclusion. In McFaull v. McFaull, 560 So.2d 1013 (La.App. 4th Cir. 1990), the Fourth Circuit recognized that the UCCJA applied to the "international area" in a case involving the Soviet Union, but ultimately found jurisdiction in Orleans Parish under the UCCJA. In Gay v. Morrison, 511 So.2d 1173 (La.App. 4th Cir. 1987), the Fourth Circuit concluded that Brazil could be considered a "state" under the UCCJA because the mother willingly consented to jurisdiction there in the original custody decree. Id. at 1176.
A review of other jurisdictions shows that, in most instances, a court's decision whether to consider a foreign nation as a "state" was a discretionary one. See Ivaldi v. Ivaldi, 147 N.J. 190, 685 A.2d 1319, *84 1325 (1996) (listing cases from various states that applied "home state" jurisdiction to a foreign nation).[12] In exercising that discretion, the courts' recognition of foreign courts generally turned on the following issues: (1) whether the child custody laws of the foreign jurisdiction and those of the United States were similar, particularly in light of considering the best interests of the child;[13] (2) whether foreign custody decrees existed prior to initiating any proceedings in the reviewing court;[14] (3) whether any of the parties were U.S. citizens;[15] and (4) whether the parties received adequate notice and a chance to be heard in the foreign forum.[16]
Cases from other jurisdictions that involve Islamic family law in applying the UCCJA fell on both sides of the equation. See Hosain v. Malik, 108 Md.App. 284, 671 A.2d 988 (Md.1996) (recognizing a Pakistani custody decree); Malak v. Malak, 182 Cal.App.3d 1018, 227 Cal.Rptr. 841 (1986) (recognizing a Lebanese decree); but see Noordin v. Abdulla, 88 Wash.App. 746, 947 P.2d 745 (1997) (refusing to recognize a decree in the Philippines); Ali v. Ali, 279 N.J.Super. 154, 652 A.2d 253 (Sup.Ct.1994) (refusing to recognize a Palestinian decree). While the factual circumstances differed in each case, a general principle pervaded: the court would recognize a foreign Islamic state if it found that the foreign jurisdiction applied the best interests of the child in its application of their child custody laws. See Hosain, 671 A.2d at 1000-06; Ali, 279 N.J.Super. at 167-69, 652 A.2d 253; see also Monica E. Henderson, Note, U.S. State Court Review of Islamic Law Custody DecreesWhen Are Islamic Custody Decrees In The Child's Best Interest, 36 J. Fam. L. 423 (1997) (arguing that the international provision of the UCCJA involves ensuring not only that the foreign court provides adequate procedural due process but also applies *85 substantive standards that consider the best interest of the child).
In this case, the trial court declined to recognize Egypt as a "state" for purposes of determining jurisdiction based on the fundamental differences between Egypt's child custody laws and Louisiana's child custody laws. In Louisiana, custody in all cases will be determined by a court in the best interest of the child. See La. Civ. Code art. 131; Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731. The trial court found that custody laws in Egypt follow strict guidelines, irrespective of the best interest of the child.[17]
According to Dr. Bakhaty's expert, Ms. Aby, Egypt follows Islamic family law, which structures some of the rights between family members based solely on gender. Under the Egyptian concept of "guardianship," the father has the absolute right to the guardianship and the physical custody of the minor child. While physical custody of a young child would generally be with the mother, guardianship or right of control always stays with the father. After a divorce, the mother's physical custody of the child will generally only be allowed if the father with guardianship lives nearby and could continue to exercise control, including the right to choose the habitual residence of the child.
Dr. Bakhaty's affidavit when he petitioned for a civil warrant confirmed this structure in Islamic law, stating that by operation of Egyptian law, both the temporary guardianship and physical custody of Ahmed rested exclusively with him. An attached translation of an Egyptian Civil Code provision attached to the petition stated that the right to custody goes to the father, then to the grandfather in case a guardian was not appointed by the father.
Further, Ms. Aby confirmed Ms. Amin's deposition testimony that under Islamic law, the husband could pronounce a divorce merely by verbal proclamation.[18] Civil effect would be given to the declaration simply by having it notarized and served on the wife or her representative. Once served, the wife may raise certain limited issues with the court, but only if she had reserved her right to do so in her original marriage contract. Based on Ms. Aby's review of the marriage contract between Dr. Bakhaty and Ms. Amin, no such rights were reserved.
In addition to finding the Egyptian laws different from those in Louisiana, the trial court further found that no prior custody decree was pending when Ms. Amin filed her first petition for divorce, custody, and support in Louisiana. The UCCJA provides a discretionary basis for declining jurisdiction when another jurisdiction has commenced simultaneous proceedings. See La.Rev.Stat. § 13:1705(A); see Ivaldi, 685 A.2d at 1326 (finding New Jersey to be the child's "home state" but remanding to *86 determine whether Morocco was more convenient forum). Dr. Bakhaty only initiated custody proceedings in Egypt after determining that Ms. Amin and Ahmed left Egypt without his permission, which is apparently a crime in that jurisdiction.
Moreover, the trial court made clear that the unique circumstances of this case required more consideration for the best interest of this child than for the extension of comity toward the Egyptian/Islamic legal system. Ahmed had never spent one night of his life away from his mother. In contrast, Dr. Bakhaty spent at most twelve weeks a year in Egypt, with the majority of that time spent in a hotel, his mother's home, or seeing patients. In addition, Dr. Bakhaty refused to visit for almost two years of his son's life during a period of marital discord.
If Dr. Bakhaty were to gain custody of Ahmed, he intends to send or take him back to Egypt immediately. However, Dr. Bakhaty has lived in the United States virtually all of his adult life; he became a citizen in 1989, and his medical practice is in New York. As the trial court noted, because of the criminal convictions against Ms. Amin, she either could never return to Egypt or would be imprisoned upon her return. It appears likely that Ahmed would be deprived of his relationship with the parent who raised him, and possibly both parents, if Dr. Bakhaty continues to spend the majority of his time in New Jersey as he has in the past. On the other hand, if Ms. Amin has custody, she intends to stay in the United States. Given Dr. Bakhaty's United States citizenship and longtime residence in this country, he would not be deprived of the opportunity to visit with Ahmed.
Despite these factual findings by the trial court, Dr. Bakhaty argues that the trial court should decline jurisdiction because custody proceedings are ongoing in Egypt, where Ms. Amin is represented by counsel, and thus, has adequate opportunity to be heard as required by La.Rev.Stat. § 13:1722. We find this argument disingenuous considering that she is faced with a potential three year prison term upon her return to Egypt, based on Dr. Bakhaty's initiation of misdemeanor charges. This fact alone distinguishes this case from those in which the spouse merely refused to return to the foreign jurisdiction, with the resultant negative consequence of losing custody. See, e.g., Malak, 227 Cal. Rptr. at 846; Hosain, 671 A.2d at 1000.
Although Egypt is arguably Ahmed's home state by the six month statutory clock, it was within the trial court's discretion whether to defer the matter to the Egyptian legal system. Considering the circumstances, we cannot say the trial court abused its discretion in not deferring this matter to Egyptian courts, because those courts are not mandated to consider Ahmed's best interest as paramount.

Reprehensible Conduct As a Basis for Declining Jurisdiction
Dr. Bakhaty further contends that the trial court should have declined jurisdiction under the UCCJA based on the negative inference drawn when Ms. Amin's wrongfully removed the minor child from Egypt without his permission. La.Rev. Stat. § 13:1707(A) provides that "[i]f the petitioner for an initial decree has wrongfully taken the child from another state or has engaged in similar reprehensible conduct the court may decline to exercise jurisdiction if this is just and proper under the circumstances." Dr. Bakhaty argues that the lower courts' decision effectively condones the unilateral conduct of this mother, and encourages the continued potential exercise of "self-help" in contravention of the UCCJA's purpose to deter abductions or other unilateral removals of *87 children undertaken to obtain custody awards. See La.Rev.Stat. § 13:1700(5).
Dr. Bakhaty's argument ignores the trial court's factual finding that Ms. Amin did not wrongfully remove the child from Egypt or engage in any other "reprehensible conduct."[19] The trial court found that Ms. Amin intended to visit Dr. Bakhaty and her family when she left Egypt. At the time she left Egypt, there were no custody proceedings pending anywhere. When Ms. Amin finally talked with Dr. Bakhaty in mid-December, he agreed to come to Baton Rouge to see her and Ahmed, but in fact, he actually had no intention of coming under the circumstances. Instead, while she and Ahmed waited for him in Baton Rouge, he flew to Egypt to confirm his suspicions about her removing Ahmed without his permission and without proper travel documents. It was only after Ms. Amin discovered from her father sometime in early January that Dr. Bakhaty was in Egypt investigating her actions for the purpose of bringing charges against her that she initiated court proceedings for divorce, custody, and support in Louisiana.
We find no manifest error in the trial court's credibility conclusion that Ms. Amin's intent when she came to the United States with Ahmed was not to abscond with the child, stay in this country, divorce her husband, and get custody of their child, as Dr. Bakhaty maintains. The fluid nature of her intentions on remaining in the U.S. were further evidenced by her willingness to return to Egypt during the proceedings. At the hearing on March 9, 2000, both parties were willing to stipulate that Ms. Amin would return to Egypt with Ahmed and continue to care for him there, if the criminal sentence against her could be dismissed and if certain support arrangements could be made. As the court of appeal recognized, these "on-the-record discussions ... apparently never reached fruition, but they belie Dr. Bakhaty's assertion that Ms. Amin's intentions were dishonorable or her conduct reprehensible." Thus, the court of appeal correctly found the trial court's factual conclusion concerning her initial intent and motivation to be supported by the record and not clearly wrong.
The court of appeal summarized the unique circumstances presented in this case as follows:
It does not involve a parent taking a child from the country in which the other parent resides. Rather, it involves a parent bringing a child to the country where the other parent resides. This is an important difference. As a result of the court's judgment in this case, Ahmed lives with his mother in the *88 United States, the country where both of his parents now live, rather than living with one parent in Egypt, while the other lives in the United States.
Based on these circumstances, we agree with lower courts' decision to exercise "residual" jurisdiction in the best interest of this child under the UCCJA, rather than deferring to the Egyptian legal system.

Personal Jurisdiction over Child Custody
Dr. Bakhaty contends that the trial court never obtained personal jurisdiction over him because he was never served personally with any documents and personal jurisdiction had never been waived. Dr. Bakhaty further argues that the trial court erred in finding his filing of a civil warrant creates minimum contact sufficient for personal jurisdiction.
A Louisiana court may adjudicate custody under the UCCJA without acquiring personal jurisdiction over an absent party. Once the subject matter jurisdiction of the Louisiana Court has been established, the resulting custody decree is binding if the absent party has been given notice and an opportunity to be heard. See La.Rev.Stat. § 13:1704.[20]
Based on the actions that Dr. Bakhaty performed to initiate and defend this custody suit, the Court is satisfied that Dr. Bakhaty received adequate notice of the pending custody proceedings. Further, notice is not required in a custody dispute when a party submits to the jurisdiction of the court. See La.Rev.Stat. § 13:1704(D). For the reasons discussed in Section II, infra, involving personal jurisdiction to determine child support, we find that Dr. Bakhaty submitted to the court when he filed his Petition for Civil Warrant, and thus, notice was not required. For the same reasons, we find Dr. Bakhaty's argument regarding insufficient service of process to be without merit.

II. Trial Court's Jurisdiction Over Child and Spousal Support

Subject Matter Jurisdiction
Dr. Bakhaty argues that the trial court lacked subject matter jurisdiction to enter an order of child support because the jurisdiction to enter a child support order is exclusively found under the provisions of the Uniform Interstate Family Support Act (UIFSA), La. Ch.Code § 1301 et seq. Dr. Bakhaty apparently contends that the trial court lacked subject matter jurisdiction because Ms. Amin cannot be considered a resident of Louisiana due to the status of her expired visitor's visa. See La. Child. Code art. 1302.5(A)(1) (discussing residency requirements for continuing exclusive jurisdiction).
However, the jurisdictional bases found in the UIFSA pertain to personal jurisdiction, not subject matter jurisdiction. See La. Child. Code art. 1302.1; State, Through Dept. of Social Services v. Matthews, 96-711 (La.App. 5th *89 Cir.1/28/97), 688 So.2d 137. The trial court had subject matter jurisdiction over the issues of child support and spousal support pursuant to La. R.S. 13:1401(A)(1). Thus, we find Dr. Bakhaty's argument to be without merit.

Personal Jurisdiction over Support Issues
Dr. Bakhaty additionally argued that the trial court lacked personal jurisdiction over him to render any order of support because he lacks the requisite minimum contacts with Louisiana and because he was never personally served with any pleadings. The trial court correctly determined that the UCCJA provisions relating to jurisdictional limitations in interstate custody disputes cannot be extended to child support matters. See La.Rev.Stat. § 13:1701(2). Thus, the trial court would only have the legal authority to render a personal judgment for child support if it had jurisdiction over Dr. Bakhaty. Imperial v. Hardy, 302 So.2d 5 (La.1974).
The trial court conducted a jurisdictional analysis under the due process rules of International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), to conclude that Dr. Bakhaty established sufficient minimum contacts with Louisiana through his filing a Petition for Civil Warrant. Based on Dr. Bakhaty's actions, the trial court found that Dr. Bakhaty has purposefully availed himself the privilege of conducting activities within Louisiana, and he has invoked the benefits and protections of Louisiana's laws. Burger King v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). Based on these actions, Dr. Bakhaty should have reasonably anticipated being haled into court in Louisiana. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). A review of the Louisiana Code of Civil Procedure leads to the same conclusion.
Personal jurisdiction may attach through compliance with Louisiana Code of Civil Procedure article 6 or through one of several statutory bases, including the UIFSA in Children's Code article 1302.1,[21] and the Long-Arm Statute, La.Rev.Stat. § 13:3201.[22] Personal jurisdiction over a party is established when that party commences a civil action to enforce a legal right "by the filing of a pleading presenting the demand to a court of competent jurisdiction." La.Code Civ. Proc. art. 421; see La.Code Civ. Proc. art. 6.[23]
*90 Dr. Bakhaty commenced a civil action titled Petition for Civil Warrant before the East Baton Rouge Parish Family Court. A Petition for a Civil Warrant in custody matters is generally governed by La.Rev. Stat. 9:343 which allows a custodial parent to obtain the court's assistance in the return of a child.[24] A properly filed Petition for Civil Warrant may limit a party's submission to the Court's jurisdiction for the sole purpose of obtaining the civil warrant. However, as both the lower courts found, Dr Bakhaty did not already have a basis for custody by order of any court, and thus, did not meet the statutory requisites for such a warrant to invoke that statute's limitations on jurisdiction. See La.Rev. Stat. 9:343(A); La.Rev.Stat. 13:3201(B); La. Ch.C. art. 1302.1(8). Under Louisiana's rule regarding fact based pleadings, Dr. Bakhaty's request for the return of the child essentially became a petition for custody.
When Dr. Bakhaty sought recognition of his custody rights regarding Ahmed, he subjected himself to the personal jurisdiction of our courts with respect to matters pertaining to Ahmed. La.Code Civ. Proc. art. 6(A)(3). Dr. Bakhaty's use of our courts differs from a nonresident who lacks the minimum contacts necessary to establish nonresident jurisdiction on a totally unrelated matter. Custody and support are always interrelated issues to a divorce, making any distinction of minimal consequence. See Norvell v. Norvell, 94-0001 (La.App. 4 Cir. 1/19/95), 649 So.2d 95, 97 (finding ex-wife's petition to enforce a Tennessee judgment for arrearages subjected her to personal jurisdiction in Louisiana "with respect to all matters ancillary to the alimony decree, including modification proceedings, when she sought enforcement in Louisiana's courts.")
The trial court concluded that service must be made in accordance with the Long-Arm Statute, La.Rev.Stat. 13:3204. While we agree that service under the Long-Arm Statute would suffice, we conclude that service was unnecessary, as Dr. Bakhaty had submitted to the jurisdiction of the court as discussed above by filing his Petition for Civil Warrant. In any event, the record contains an affidavit of Long-Arm Service, via certified mail, return receipt requested for both petitions filed by Ms. Amin. The original green card, which shows that the certified mail was signed for, is also in the record. Thus, Dr. Bakhaty was validly served with Ms. Amin's Petition for Divorce under the Louisiana Long-Arm Statute.

III. Other Issues Raised On Appeal
Dr. Bakhaty claims the trial court erred in refusing to order Ms. Amin to answer *91 certain questions about how she obtained Ahmed's Egyptian passport and her application for asylum in the United States. Because of the criminal matters lodged against her in Egypt and possible ramifications with the Immigration and Naturalization Services in the United States, she pled the Fifth Amendment in response to those questions. Dr. Bakhaty argues the trial court should have insisted on answers to those questions, and its failure to do so prejudiced his case.
Although the exact communications resulting in Ahmed's Egyptian passport were not elicited from her, documents submitted by Dr. Bakhaty were accepted into evidence. These indicated that in November 1998, Ms. Amin's brother-in-law, Hany Zohdy, an attorney who lives in Baton Rouge, obtained affidavits from two of his Egyptian friends, stating Ahmed needed medical treatment from his father and needed to visit him in the United States. Thus, the circumstances under which Ahmed's Egyptian passport were obtained were generally known to the trial court without additional testimony from Ms. Amin or Mr. Zhody.[25]
Similarly, Ms. Amin's testimony indicated that, although her original intent was merely to visit the United States, the circumstances occurring after her arrival caused her to change her mind and she now intended to stay in Louisiana, if possible. Mark Lazarre, an expert on immigration requirements, informed the court that the declarations needed for a visitor's visa and an asylum application were internally inconsistent; either Ms. Amin intended to stay in the United States or she did not. The trial court was made aware of this inconsistency and had sufficient information to consider it in evaluating Ms. Amin's credibility on this and other issues. Therefore, Dr. Bakhaty was not prejudiced by the trial court's refusal to order Ms. Amin to answer questions about her asylum application. We find this argument to be without merit.

CONCLUSION
For the foregoing reasons, we find that the trial court did not err considering the circumstances when it declined to recognize Egypt as the child's "home state," and assumed jurisdiction under the residual jurisdiction clause under the Uniform Child Custody Jurisdiction Act, La.Rev. Stat. 13:1700 et seq. Further, the trial court and court of appeal correctly found that personal jurisdiction was established by the Petition for Civil Warrant filed by the defendant.

DECREE
Accordingly, we affirm the First Circuit Court of Appeal judgment denying Dr. Bakhaty's exceptions to subject matter and personal jurisdiction. The case is remanded to the trial court for further proceedings consistent with this opinion.
AFFIRMED AND REMANDED.
CALOGERO, C.J., and VICTORY, J., concur and assign reasons.
*92 CALOGERO, Chief Justice, concurring.
I subscribe to the majority's result in this case. As to child custody, under these circumstances, I would likewise decline to treat a foreign nation as a state pursuant to the UCCJA. I am particularly persuaded by the fact that Dr. Bakhaty voluntarily went to East Baton Rouge Parish and filed a petition for civil warrant.[1] This pleading was not a valid petition for civil warrant, but a prima facie request for a Louisiana court to award custody in his favor. Of equal significance, in my opinion, are the facts that Dr. Bakhaty has been a United States citizen since 1989, has lived in the United States virtually all his adult life, has a residence in New Jersey, and practices medicine in New York. Furthermore, Ms. Amin wishes to remain in Louisiana. Given Dr. Bakhaty's significant connection with the United States, his voluntary entry into Louisiana to request custody of the minor child, and the wishes of Ms. Amin to remain in this state, jurisdiction over the minor child is appropriate in Louisiana.
VICTORY, J., concurring.[*]
I concur in the result reached by the majority. The trial court made a finding of fact that the child at issue in this case was relocated to Baton Rouge, Louisiana from Egypt by his mother in good faith with the intent of forming a family unit with the child's father, who has a residence in this country and is a United States citizen. The child was born in Egypt and had always resided there with his mother. Both mother and father are Egyptian nationals. However, mother and child have an extended family in Baton Rouge. Upon learning of the relocation, father commenced legal proceedings in Egypt and thereafter sought the assistance of our courts to require transfer of the child to him, relying on Egyptian principles of custody and guardianship. By that time, however, mother had already filed a proceeding in this state asking for a determination of custody that pre-dated custody proceedings instituted by the father in Egypt. The father claims that a final Egyptian custody decree has now been issued in this matter, although it does not appear that such had been rendered at the time of the Louisiana trial of this case, which is not yet final.
Ordinarily, I would be inclined under principles of comity to recognize a foreign custody judgment, particularly where, as here, the child was a habitual resident of another nation before his mother traveled with him to this country. Nevertheless, a body of law has developed in the area of international child custody disputes that impacts my views on the handing of this case. The United States is signatory to the Hague Convention which addresses such issues. Under that Convention, remedies are available in a case such as this when a parent removes a child from his nation of habitual residence. However, that Convention, which might have provided the father a remedy in this case, was not signed by Egypt. Courts in this country have frequently examined the Hague Convention and the United States regulations issued pursuant thereto. It appears to be settled that the Convention applies *93 only when both countries involved are signatory nations. Where a parent from a non-signatory nation removes a child to a signatory country, there is no remedy available under the Hague Convention to the parent from the nation of origin. Had Egypt signed the Convention, our Department of State regulations suggest that this country would have cooperated in a request made by the Egyptian government for the return of the child. But Egypt chose not to sign the convention, declining to agree to a set of rules governing international custody disputes. See Mezo v. Elmergawi, 855 F.Supp. 59 (E.D.N.Y.1994) and the materials on international law cited therein. That being the case, I am not persuaded that any judgment of the Egyptian court regarding custody of this child, assuming that one was rendered, is entitled to the same comity that I might otherwise be inclined to extend. Comity is a principle of judicial courtesy that implies mutuality. It does not appear that Egypt would consider itself constrained to extend comity to a custody determination by a court in the United States of America.
Since I do not believe we are bound to decline jurisdiction under principles of comity, Louisiana courts have subject matter jurisdiction over the minor child now living in this state unless there is a superior claim to jurisdiction by some other state. Even though Louisiana is not the "home state" as that term is defined in the Act, our state has jurisdiction over children present within our borders where no other state has jurisdiction. La. RS. 13:1702(4)(i). Egypt is not a State within the meaning of the UCCJA. Thus under the terms of La. R.S. 13:1702(4)(i), Louisiana can assert subject matter jurisdiction over the child in question.
I recognize that Louisiana has adopted Section 1722 of the Uniform Act which provides:
The general policies of this Part extend to the international area. The provisions of the part relating to the recognition and enforcement of custody decrees of other states apply to custody decrees and decrees involving legal institutions similar in nature to custody institutions rendered by appropriate authorities of other nations if reasonable notice and opportunity to be heard were given to all affected persons.
Notwithstanding this general provision, I am satisfied that Louisiana is justified in exercising its jurisdiction in this case. I reach this conclusion because our state was the first jurisdiction in which a custody proceeding was commenced and because the evidence in the record reasonably supports the conclusion of the trial court that the legal precepts under which a custody determination would be made in Egypt differ substantially and materially from our own. Moreover, since Egypt has declined to sign the Hague Convention, I do not feel compelled to exercise our discretion in favor of a nation that has rejected the principles that underlie both the Hague Convention agreements in this area and the UCCJA.
Accordingly, I concur.
NOTES
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.
[2] While Egypt apparently recognizes Dr. Bakhaty as an Egyptian national with dual citizenship, we note that naturalization in the United States requires a renunication of all foreign citizenship. See 8 U.S.C. § 1448.
[3] Dr. Bakhaty also owns a house in Egypt, but Dr. Bakhaty's mother resides in it, and all the contents of this home belong to her.
[4] Ahmed also has a United States passport issued in April 1995, indicating that he is a United States citizen.
[5] Dr. Bakhaty submitted a judgment in the Egyptian court sentencing Ms. Amin in absentia to one week in prison, payment of damages, and court costs. He also submitted documents showing that Ms. Amin was convicted in absentia and sentenced to pay a fine of 501 Egyptian pounds and serve three years imprisonment "with labour."
[6] The civil warrant petition was allotted to a different judge from the one in whose court Ms. Amin's divorce and custody matters were pending; the second judge signed an order authorizing a warrant to be issued for law enforcement personnel to assist Dr. Bakhaty in locating Ahmed and taking him back to Egypt.
[7] In the petition, Dr. Bakhaty also alleged that his wife had obtained travel documents for herself and their son under false pretenses. An attachment to the petition shows that on February 12, 1999, Dr. Bakhaty brought a "civil misdemeanor" action in the Egyptian court, charging Ms. Amin with forgery of Ahmed's travel documents.
[8] As of the date of the trial court's ruling awarding interim custody and support, no final custody award had ever been rendered by any court in any country.
[9] La.Rev.Stat. § 13:1702(A) provides:

A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(4) (i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
[10] "Home state" is defined as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned." La.Rev.Stat. § 13:1701(5).
[11] "State" is defined as "any state, territory, or possession of the United States, the Commonwealth of Puerto Rico, and the District of Columbia." La.Rev.Stat. § 13:1701(10).
[12] Those states that refused to recognize a foreign nation as a "state" under the UCCJA lacked the statutory equivalent of La.Rev.Stat. § 13:1722 that extends the general policies of the UCCJA to the international area. See Schroeder v. Vigil-Escalera Perez, 76 Ohio Misc.2d 25, 664 N.E.2d 627, 636-37 (Com.Pl. 1995); Rashid, 824 S.W.2d at 503; but see Klien v. Klien, 141 Misc.2d 174, 533 N.Y.S.2d 211 (N.Y.1988) (holding that Israel is not a "state" under the UCCJA's definition of "state").
[13] See Horlander v. Horlander, 579 N.E.2d 91 (Ind.App.1991) (finding France to be the more convenient forum with a legal institution similar in nature to Indiana); Middleton v. Middleton, 227 Va. 82, 314 S.E.2d 362, 368 (1984) (finding England the "equivalent of statutory `home state'" because "English procedural and substantive law of child custody was `reasonably comparable' to the law of Virginia").
[14] See Hosain v. Malik, 108 Md.App. 284, 671 A.2d 988 (Md.1996) (finding that mother fled to this country after Pakistan awarded custody to the father); Rashid, 824 S.W.2d at 499 (finding that no proceedings had been instituted in any country prior to the initial filing in Missouri).
[15] At trial, Dr. Bakhaty's expert explained that citizenship should not be a determinative factor, and we agree in principle. In practice, a pattern has emerged that parties with U.S. citizenship enjoy greater success in keeping the case on American soil for custody determinations under the UCCJA. See June Starr, The Global Battlefield: Culture and International Child Custody Disputes At Century's End, 15 Ariz. J. Int'L & Comp. Law 791 (1998). While it may seem that the pattern is reinforced by the result in this case, we find that the parents' residency, i.e., where the parents spend the majority of their time, more relevant than citizenship per se.
[16] See Malak v. Malak, 182 Cal.App.3d 1018, 227 Cal.Rptr. 841, 846 (1986) (finding that wife had notice but refused to return to Lebanon); Hosain, 671 A.2d at 1000 (finding that wife was represented by counsel in Pakistan but refused to return); Ivaldi, 685 A.2d at 1327 (noting that father was participating in Moroccon proceedings).
[17] Dr. Bakhaty also claims the court demonstrated bias against the Egyptian legal system by selecting only portions of Patricia Aby's testimony in support of its ruling. However, we find that the trial court's overview of Egyptian law to be an accurate reflection of the evidence in the record presented by both parties. Thus, we find this argument to be without merit.
[18] Men in Egypt can divorce their wives anytime and without court approval. The procedure for a man involves the husband proclaiming "Talik" under oath three times, which roughly translates to "I divorce thee." During the three months after the proclamation, the husband has the option to revoke his proclamation, and the parties will remain married. On the other hand, in order for the wife to obtain a divorce, she must have court approval, and she must prove that she was physically or psychologically harmed. After the parties divorced in this case, the law in Egypt was changed to make divorce somewhat easier to obtain for women.
[19] Moreover, even if Ms. Amin engaged in "reprehensible conduct," the trial court reasoned that any alleged abduction or other violations of custody orders subsumed to the paramount concern of considering the best interest of the child. See Bergeron v. Bergeron, 492 So.2d 1193, 1203 (La.1986); see also Rashid, 824 S.W.2d at 502 (discussing the discretionary ground provided by the "reprehensible conduct" provision requires considering "the welfare of the child rather than the tactics of the parents"). This Court stated in Bergeron, 492 So.2d at 1203:

If the best interests of all children are to be served, the improper removal of a child from physical custody and improper retention of a child after a visit or other temporary relinquishment must be deterred .... [t]he imperative to discourage abduction and other violations of custody orders may, in extraordinary circumstances, be submerged to the paramount concern in all custody matters for the welfare of the child. See Nehra v. Uhlar, 43 N.Y.2d 242, 401 N.Y.S.2d 168, 372 N.E.2d 4 (1977).
The trial court apparently concluded that any alleged reprehensible conduct by the mother was outweighed by the best interest of the child in maintaining contact with both parents.
[20] La.Rev.Stat. § 13:1704 provides:

A. Notice required for the exercise of jurisdiction over a person outside this state shall be given in a manner reasonably calculated to give actual notice, and may be:
(1) By personal delivery outside of this state in the manner prescribed for service of process within this state; or
(2) By registered or certified mail; or
(3)(a) If the party is a nonresident or absentee who cannot be served by the methods provided in Paragraphs (1) and (2) of this Subsection, either personally or through an agent for service of process, and who has not waived objection to jurisdiction, the court shall appoint an attorney at law to represent him.
. . .
D. Notice is not required if a person submits to the jurisdiction of the court.
[21] We note that the UIFSA is a reciprocal statute that requires a foreign jurisdiction to have enacted the UIFSA or a substantially similar law. See La. Child. Code art. 1301.3(22)(b).
[22] La. Children's Code article 1302.1 provides, in part:

In a proceeding to establish, enforce, or modify a support order or to determine parentage, a tribunal of this state may exercise personal jurisdiction over a nonresident individual, or his tutor, in any of the following situations:
. . .
(8) There is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction.
Additionally, La.Rev.Stat. 13:3201(B) provides: "In addition to the provisions of Subsection A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and of the Constitution of the United States."
[23] La.Code Civ. Proc. art. 6 provides that:

A. Jurisdiction over the person is the legal power and authority of a court to render a personal judgment against a party to an action or proceeding. The exercise of this jurisdiction requires:
. . .
(3) The submission of the party to the jurisdiction of the court by commencing an action or by the waiver of objection to jurisdiction by failure to timely file the declinatory exception.
B. In addition to the provisions of Paragraph A, a court of this state may exercise personal jurisdiction over a nonresident on any basis consistent with the constitution of this state and with the Constitution of the United States.
[24] La.Rev.Stat. 9:343 provides:

A. Upon presentation of a certified copy of a custody and visitation rights order rendered by a court of this state, together with the sworn affidavit of the custodial parent, the judge, who shall have jurisdiction for the limited purpose of effectuating the remedy provided by this Section by virtue of either the presence of the child or litigation pending before the court, may issue a civil warrant directed to law enforcement authorities to return the child to the custodial parent pending further order of the court having jurisdiction over the matter.
B. The sworn affidavit of the custodial parent shall include all of the following:
(1) A statement that the custody and visitation rights order is true and correct.
(2) A summary of the status of any pending custody proceeding.
(3) The fact of the removal of or failure to return the child in violation of the custody and visitation rights order.
(4) A declaration that the custodial parent desires the child returned.
[25] Dr. Bakhaty also claims the court erred in refusing to allow discovery through the deposition of Mr. Zhody concerning his actions on behalf of Ms. Amin. However, the trial court found Dr. Bakhaty had failed to present sufficient evidence of all four factors required by Article 508 of the Louisiana Code of Evidence to justify the deposition of a party's attorney. The court also concluded that extraordinary circumstances were not shown. La.Rev.Stat. C.C.P. art. 1452(B). We find no legal error in the court's refusal to order Mr. Zohdy to submit to a deposition, nor do we find any prejudice to Dr. Bakhaty's case due to the court's decision.
[1] As indicated in the majority opinion, a petition for civil warrant is governed by La.Rev. Stat. 9:343. The statute allows a parent with a valid custody order to apply for a civil warrant directing law enforcement authorities to return the child to the custodial parent pending further order of the court having jurisdiction over the matter. If filed properly, the court's jurisdiction will be limited to obtaining the civil warrant.
[*] Retired Judge Robert L. Lobrano, assigned as Justice Pro Tempore, participating in the decision.