965 So.2d 624 (2007)
Sheila MARTIN-CREECH and Carles A. Creech, Plaintiffs-Appellants
v.
Deidra ARMSTRONG and J.D. Lester, Defendants-Appellees.
No. 42,649-CA.
Court of Appeal of Louisiana, Second Circuit.
September 12, 2007.
Rehearing Denied October 1, 2007.
*625 Charles R. Joiner, for Appellants.
John Clay Hamilton, Oak Grove, for Appellee, Deidra Armstrong.
James Moore Miller, Rayne, for Appellee, J.D. Lester.
Before GASKINS, CARAWAY and DREW, JJ.
CARAWAY, J.
A four-month-old child was brought to Louisiana by his aunt and uncle, the plaintiffs, while his mother remained in jail in West Virginia. Upon the mother's release from jail, plaintiffs filed this custody action against her, bringing into application the Uniform Child Custody Jurisdiction Law ("UCCJL"), which has been adopted in Louisiana as La. R.S. 13:1700, et seq. Plaintiffs also named as defendant the alleged father of the child, who is also a West Virginia resident. The trial court ruled that West Virginia was the proper jurisdiction under the UCCJL, yet initially, this proceeding was only stayed pending the filing of an action in West Virginia by the mother. Upon suit being filed in West Virginia, the case was dismissed and this appeal followed. Finding that the trial court correctly followed the UCCJL, we affirm.

Facts
This custody proceeding was instituted in Louisiana in July 2007 when the child was seven months old. The mother, Deidra Armstrong, was incarcerated in West Virginia when she gave birth on June 8, 2006.[1] Armstrong alleges that she met the alleged father of the child, J.D. Lester, at a work release program. Lester was not named on the birth certificate because he was absent from the birth.
Because she did not anticipate release from prison immediately, Armstrong surrendered temporary custody of the child to her maternal aunt and her husband, Sheila Martin-Creech and Carles[2] A. Creech. *626 Armstrong and Sheila executed a document entitled "Agreement of Care of Minor Child." A West Virginia social worker gave Armstrong the agreement to help the non-parents receive state services for the child.
Although the Creeches previously resided in Oklahoma for six years, they came to West Virginia because Carles had obtained work there in November of 2005. Sheila suffered from heart problems and Armstrong's mother, Lisa Miller, assisted with her sister's recuperation. The Creeches agreed verbally to take the child to the jail for weekend visitation and did so from June until August. In August 2006, they told Armstrong of a proposed trip to Iowa to obtain an RV and take care of business responsibilities in Oklahoma. Armstrong was under the impression that the Creeches would soon return to West Virginia.
The Creeches went back to West Virginia once, on October 22, 2006, to allow visitation between the child and his mother. The Creeches told Deidra at that time that they were going to live in Louisiana. Carles lost his job and Louisiana is the state where his family still resides. Nevertheless, according to Armstrong, the three of them agreed that the couple would bring the child back to visit Armstrong once each month until her release.
The Creeches instituted the present custody proceedings against Armstrong and Lester on January 12, 2007, the same day Armstrong was released from prison.[3] That day, the trial court also issued a "status quo" order granting the Creeches the care, custody and control of the minor child pending further orders of the court. Counsel was appointed to represent the absent defendants, and a hearing date was set for determining custody.
Armstrong and Lester's appointed counsel filed exceptions to the jurisdiction. Subsequently, Armstrong obtained separate counsel, who filed a supplemental exception regarding jurisdiction and an exception of no cause of action. Armstrong also moved to vacate the "status quo" custody order.
A hearing on the issue of jurisdiction under the UCCJL was held on February 23, 2007. Following trial, the trial court denied the exception of no cause of action but sustained the exception of lack of jurisdiction, finding that West Virginia was the proper place for determining custody. Accordingly, the "status quo" order was vacated and the Creeches were ordered to surrender custody to Armstrong immediately. The Creeches were given visitation with the child in West Virginia on alternating weekends.
The trial court ruling also stayed the Louisiana proceedings pending Armstrong's custody proceedings in West Virginia within sixty days. Later, Armstrong filed a true copy of a pleading entitled "Petition to Establish Paternity and to Award Custody" from the Family Court of Harrison County, West Virginia, naming the Creeches and Lester as parties and requesting a hearing within sixty days. On April 4, 2007, the Louisiana trial court vacated the stay and dismissed this action. This appeal by the Creeches ensued.
On appeal, the Creeches raise four specifications of error regarding the trial court's rulings. They contend that the court erred in sustaining the exception of lack of subject matter jurisdiction, in granting Armstrong time to file custody proceedings in West Virginia, in adjudicating *627 custody after declining jurisdiction and in ultimately dismissing the proceedings without a notice or hearing.

The Uniform Child Custody Jurisdiction Law
Broadly speaking, the Louisiana Code of Civil Procedure allows jurisdiction in Louisiana over the minor's status through this proceeding. It is "a proceeding to obtain the legal custody of a minor" where the minor is "domiciled in, or is in, this state." La. C.C.P. art. 10(A)(5) (emphasis added). Although a court's general subject matter jurisdiction is established by either the state constitution or by legislation, the UCCJL functions to "graft a second tier of inquiry onto the question of jurisdiction" in custody cases. Stelluto v. Stelluto, 05-0074 (La.6/29/05), 914 So.2d 34; Amin v. Bakhaty, 01-1967 (La.10/16/01), 798 So.2d 75. The UCCJL imposes jurisdictional limitations that require a court with general subject matter jurisdiction to decline to exercise it. Id. These limitations further the UCCJL's stated purposes of avoiding jurisdictional competition, assuring that custody litigation takes place in the most convenient forum, promoting a stable home environment, deterring abductions, and encouraging cooperation among the courts of different states. La. R.S. 13:1700(A); Revere v. Revere, 389 So.2d 1277, 1279 (La.1980).
Under the UCCJL, home state means in pertinent part, the state in which the child, immediately preceding the time involved, lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months. La. R.S. 13:1701. Person acting as a parent means a person, other than a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody. Id.
Consistent with these stated goals, the UCCJL provides in La. R.S. 13:1702 ("Section 1702") four grounds for exercising jurisdiction in a custody case. Only two of those grounds, Sections 1702(A)(2) and (4), are relevant here since there is no "home state" jurisdiction. The pertinent provisions of Section 1702 are as follows:
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
(3) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
(4)(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine *628 the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
B. Except under Paragraphs (3) and (4) of Subsection A, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
* * * * *
Relevant to an inconvenient forum, the UCCJL provisions of La. R.S. 13:1706 provide:
A. A court which has jurisdiction under this Part to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
B. A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a curator ad hoc or other representative of the child.
C. In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
(1) If another state is or recently was the child's home state.
(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.
(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state.
(4) If the parties have agreed on another forum which is no less appropriate, and
(5) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 1700.
D. Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.
E. If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.
* * * * *
Thus, although the UCCJL analysis is technically relevant to a court's subject matter jurisdiction, the choice of the optimum jurisdiction under the UCCJL focuses on the strength of connections between the child and the competing states, more akin to a personal jurisdiction analysis. Amin, 798 So.2d at 80-81. The significant connection standard requires proof that Louisiana had the strongest connection to the child when the suit was filed. Stelluto, supra.
Our supreme court has articulated the standards of review for the analogous weighing of state contacts for the personal jurisdiction exception as follows:

*629 In reviewing a judgment on an exception of lack of personal jurisdiction, we are mindful that the factual findings underlying the judgment are reviewed for manifest error. However, the application of the facts to established rules of law is a legal question, and thus, the legal issue of personal jurisdiction over a non-resident by a Louisiana court is subject to de novo review.
Southeast Wireless Network, Inc. v. U.S. Telemetry Corp., U.S., 06-1736 (La.4/11/07), 954 So.2d 120, 125 (citations omitted). We find these same standards applicable for review of the trial court's application of the facts of this case for the choice of jurisdiction under the UCCJL.

Discussion
There is no argument that this young child had ever resided in any state for six months prior to the filing of this proceeding. As a result, "home state" jurisdiction does not serve as a basis for this custody action to proceed in Louisiana. The test, therefore, which the trial court applied, was to examine which of the two states, Louisiana or West Virginia, should assume jurisdiction to make a child custody determination in this case based upon the significant connections standard. The authority for that ruling appears from a reading of the two UCCJL provisions of Section 1702, subparts A(2) and A(4). The test concerns connexity of the child and the parents or contestant/custodian with the state and the availability of substantial evidence concerning the child's present or future care, protection, training, and personal relationships in a given state. La. R.S. 13:1702(A)(2).
The Creeches argue that the child's presence in Louisiana five-and-one-half months before the hearing and their connections with Louisiana[4] were enough to allow a Louisiana court to elect making the custody determination for this child. That however does not compare with the significant connections and interests of West Virginia which under Section 1702(A)(4) and the general purposes of the UCCJL is the jurisdictional choice.
The Creeches are not the parents and their actual physical custody of the child prior to this suit was not the result of any legal proceeding or adoption. The Creeches acknowledge that they understood their arrangement with the child was temporary, pending Armstrong's release from prison. On the other hand, both parents reside in West Virginia, where the child was born. The child's maternal grandmother, who accompanied Armstrong to Louisiana for the hearing, resides in West Virginia. The Creeches have connections with West Virginia, although it is apparent that they have had difficulty establishing steady residence in any one state since moving from Oklahoma. We agree with the trial court that a four-month period in Louisiana prior to this action is insufficient to satisfy the connection requirement of the UCCJL when compared to the connections of the child with the State of West Virginia. In these circumstances, the trial court correctly concluded that under the UCCJL, the best interest of the child would be served by custody proceedings conducted in West Virginia.
The remaining assignments of error concern the trial court's actions in awarding temporary custody to Armstrong, and later dismissing the suit upon Armstrong's ex parte filing of evidence of the institution *630 of an action in West Virginia. In making these arguments, however, the Creeches do not dispute the fact of the filing of the West Virginia proceeding. Therefore, we find these assignments of error moot.
The initial custody award to Armstrong took effect immediately. An ordinary appeal of a judgment awarding custody does not suspend execution of the judgment. La. C.C.P. art. 3943. Therefore, the Creeches' remedy would have been through emergency supervisory review and staying of the proceedings immediately following the ruling. La. C.C.P. art. 2201. Courts of appeal may exercise immediate supervisory jurisdiction if an error by the trial court may cause an applicant irreparable injury or if an appeal will not afford an adequate remedy. Woodward v. Gehrig, 99-242 (La.App. 3d Cir.12/22/99), 755 So.2d 927, writ denied, 00-0187 (La.2/2/00), 753 So.2d 840. The absence of a request for expedited supervisory review of the trial court's award of temporary custody, and the fact of the existing West Virginia custody proceeding, make any appellate review of the trial court's custody award at this late date moot. Relief regarding custody to which the Creeches may be entitled is now readily available in the West Virginia action.
Likewise, the procedure employed by the trial court insuring that a custody proceeding begin in West Virginia should no longer be questioned. Nevertheless, the authority for the trial court's action appears recognized in the UCCJL, La. R.S. 13:1706(E), supra. A remedy of any perceived procedural problem with the trial court's ruling would involve further action by Louisiana courts in conflict with the ongoing custody proceeding in West Virginia, in violation of the purposes of the UCCJL. Because we affirm the trial court's recognition of West Virginia as the state with UCCJL jurisdiction over this custody dispute, these additional assignments of error are moot.

Conclusion
For the foregoing reasons, we affirm the judgment of the trial court at appellants' costs.
AFFIRMED.
APPLICATION FOR REHEARING
Before STEWART, GASKINS, CARAWAY, DREW and LOLLEY, JJ.
Rehearing denied.
NOTES
[1] Armstrong served four years and ten months in prison for the crimes of grand larceny, involuntary manslaughter and contributing to the delinquency of a minor committed when she was eighteen years old.
[2] Also spelled "Carlos" in the record.
[3] Armstrong testified that the Creeches knew that she would be released from prison eight months after the birth of the child.
[4] Carles Creech grew up in Louisiana, he has relatives here, and the Creeches have occasionally resided here before.